1
2
3
4
5
6
7                   UNITED STATES DISTRICT COURT

8                  EASTERN DISTRICT OF CALIFORNIA

9

10   NANCY SCHWARTZ on behalf of        No. 2:10-cv-03048-MCE-GGH
     herself individually as the
11   mother of MICHAEL PARKER,
     deceased; et al.,
12
              Plaintiffs,
13
          v.                            MEMORANDUM AND ORDER
14
     LASSEN COUNTY ex rel. the
15   LASSEN COUNTY JAIL (DETENTION
     FACILITY), et al.,
16
              Defendants.
17

18                        ----oo0oo----

19       Plaintiff Nancy Schwartz ("Plaintiff"), survivor of

20   decedent, Michael Parker ("Decedent"), on behalf of herself and

21   as successor-inp-interest to Decedent, seeks redress for several

22   federal and state law claims alleging that the County of Lassen

23   ("County"), Sheriff of Lassen County, Steven Warren ("Warren"),

24   Officer Ed Vega ("Vega"), The City of Susanville ("City"), the

25   Susanville Police Department ("Department"), and undersheriff

26   John Mineau ("Mineau") violated decedent's civil rights leading

27   up to, and during decedent's detainment at the Lassen County

28   Adult Detention Facility (the "Facility").

                                    1

1    By Memorandum and Order signed August 1, 2011, this Court

2 granted in part Defendants' Motion to Dismiss Plaintiff's Second

3 Amended Complaint and granted Plaintiff leave to amend.

4 (See ECF No. 38.)  Presently before the court is the motion of

5 Defendants Mineau and the County to dismiss claims 1, 2, 3, 4, 8,

6 9, 11, 12 and 13 of Plaintiff's Third Amended Complaint[1] ("TAC")

7 pursuant to Federal Rule of Civil Procedure 12(b)(6).  (See

8 Def.'s Mot. to Dismiss Pl.'s Third Am. Compl. ["MTD"], filed

9 September 2, 2011 [ECF No. 43].)  Both the City and Officer Vega

10 joined in the motion to dismiss.

11 ///

12 ///

13 ///

14 ///

15 _____

16    [1] As Plaintiff notes in her opposition, the TAC contains
typographical errors in paragraphs 73, 76 and 80 in which she

17 states that her claims are brought under the Eighth Amendment, as
opposed to the Fourteenth.  Defendants' moving papers acknowledge

18 this typo: "There is no allegation that either Ms. Schwartz or
Mr. Parker suffered a post-conviction injury.  Nonetheless,

19 [P]laintiff pleads the Eighth Amendment For purposes of this
motion, responding defendants will treat the alleged Eighth

20 Amendment violations as though they were [properly]stated under
the Fourteenth Amendment," as does the Court.  (MTD at 1:4 n.2.)

21 Moreover, the Court notes that this distinction does not affect
the Court's analysis — as described in detail below, the same

22 "deliberate indifference" standard is applied to claims for
failure to provide medical care to pretrial detainees as is

23 applied to claims by post-conviction prisoners under the Eighth
Amendment cruel and unusual punishment rubric.

24    The court further notes that, when Plaintiff realized these
typographical errors, she filed a motion for leave to file a

25 corrected version of the TAC. (ECF No. 48.)  Since the Court and
Defendants, as stated above, construe these claims as being

26 properly brought under the Fourteenth Amendment, the Court, via
this order, rules on the substantive validity of Plaintiff's TAC.

27 Since the court grants in part and denies in part Defendants'
motion with leave to amend, Plaintiff's motion for leave to file

28 a corrected TAC is hereby denied as moot.

2

(Joinder, filed Sept. 7, 2011, [ECF No. 47].)[2]  For the reasons
set forth below, Defendants' motion is granted in part and denied
in part.[3]

**BACKGROUND**

The case arises out of the passing of Michael Parker,
Plaintiff's son, who suffered from certain medical conditions —
diverticulitis and congenital heart condition — that required a
restricted diet  (Pl.'s Third Am. Compl. ("TAC"), filed Aug. 24,
2001 [ECF No. 40] ¶ 13, 42.)  Decedent passed away at Renown
Hospital in Reno, Nevada, after colon and gastronomical
complications.  Prior to his death, Decedent intermittently spent
time at the Lassen County Adult Detention Facility as a result of
allegations of prowling and stalking his ex-girlfriend.  The
gravamen of Plaintiff's complaint is that Defendants violated
Decedent's constitutional rights by refusing to provide necessary
medical care while decedent was detained at the Facility.

_____

[2] The court granted Defendants' motion to dismiss the Second
Amended Complaint with leave to amend as to Plaintiff's first,
second, third, fourth, eighth, ninth, tenth, twelfth and
thirteenth claims against officer Vega and the City of
Susanville. (Mem. & Order, filed Aug. 1, 2011 [ECF No. 38], at
25:1-5.)  Plaintiff, however, failed to add any additional
factual allegations, or argument, against either Officer Vega or
City of Susanville.  As such, the aforementioned claims against
Officer Vega and the City of Susanville are hereby dismissed with
prejudice.  As a result of dismissal of these claims, none of
Plaintiff's remaining claims are asserted against Officer Vega,
and thus, the entirety of Plaintiff's complaint against Officer
Vega is hereby dismissed.

[3] Because oral argument will not be of material assistance,
the Court ordered this matter submitted on the briefing.  E.D.
Cal. R. 230(g).

1    Decedent was first detained at the Facility on July 3, 2009,

2    when he "was arrested and charged with Lewd vagrancy, peep, prowl

3    and stalking"; his mother posted bail at the set bond rate of

4    $3,750.  (Id. ¶ 14.)  On July 17, 2009, Decedent was charged with

5    violating a court order prohibiting Decedent from contacting his

6    ex-girlfriend.  (Id. ¶ 16.)  Five days later, while detained at

7    the center, Decedent requested to see a doctor; instead of seeing

8    a doctor, a physician's assistant attended to Decedent and

9    concluded that he suffered from a stomach flu.  (Id. ¶ 18.)

10   Finally, on August 6, 2009, after complaining of intense pain,

11   the Center's contract physician administered x-rays which

12   revealed an infected colon.  (Id. ¶ 19.)

13       The next day, Plaintiff's mother posted Decedent's bail and

14   Plaintiff was admitted to Renown Hospital in Reno, Nevada, in

15   order to obtain a procedure in which a drain tube was inserted

16   into his colon for purposes of addressing the infection.  (Id.

17   ¶ 20.)  On August 29, 2009, Decedent's family physician,

18   Dr. Meadows — also the contract doctor for the hospital —

19   removed the drain tube at his office.  (Id. ¶ 21.)  According to

20   the TAC, approximately one month after he removed the drain,

21   Dr. Meadows wrote a letter stating that "any incarceration should

22   be converted to a house arrest because of the serious medical

23   condition of Michael Parker."  (Id. ¶ 23.)

24       On September 21, 2009, Decedent accompanied Plaintiff to the

25   bank.  (Id. ¶ 24.)  When she returned, she found her son

26   surrounded by approximately six police cars.  (Id.)  The

27   Susanville police officers informed Plaintiff that Decedent had

28   driven past his ex-girlfriend's home that morning.

4

1  (Id. ¶ 25.)  Plaintiff alleges that she told the officers that
2  incarceration would kill her son.  (Id. ¶ 26.)  At that time,
3  "Officer Vega stated that he would arrest Michael Parker . . .
4  and did so despite actual knowledge that the Lassen Detention
5  Facility Doctor specifically stated that Michael Parker should
6  not be incarcerated because of his serious medical condition."
7  (Id. ¶ 29.)  Plaintiff alleges that Decedent was taken to the
8  Facility despite the individual officers' cognizance of the
9  letter allegedly written by Dr. Meadows warning against
10 incarceration.  (Id. ¶ 30.)

11      Plaintiff alleges that, during the bond hearing, Mineau
12 reported to the court numerous instances of prowling and TRO
13 violations "for the purpose of influencing the court to make the
14 bond so high that [Plaintiff], with her bond capacity as a bond
15 agent, could not write the bond, thus insuring Michael Parker
16 would not be released on bond."  (Id. ¶ 33.)  Plaintiff further
17 alleges that the "Sheriff of Lassen County knew that [Mineau] had
18 exaggerated and told untruthful statements to the judge in order
19 to raise the amount of the bail and knew that [Plaintiff] was a
20 bail agent and that the amount of the bail would have to be
21 raised to an amount higher than usually required for a
22 misdemeanor."  (Id. ¶ 34.)  Decedent's bail was ultimately set at
23 $150,000.  (Id. ¶ 35.)
24 ///
25 ///
26 ///
27 ///
28 ///

5

1    Plaintiff alleges that she visited her son in the facility
2    on September 30, 2009[4] and requested of an unknown guard that her
3    son be released for medical attention; Plaintiff alleges that the
4    Facility refused her request to release Decedent to home arrest
5    or provide him "necessary life-sustaining medical attention."
6    (Id. ¶¶ 36-37.)  According to Plaintiff, when she visited
7    Decedent one week later, he had visibly lost over forty pounds.
8    (Id. ¶ 38.)  When Plaintiff asked Decedent why he had not seen a
9    doctor, he replied that the Facility staff told him "quit
10   complaining and make the best of it."  (Id. ¶ 39.)

11   On October 22, 2009, Decedent was once again released to
12   Renown Hospital. (Id. ¶ 40.)  Plaintiff alleges that nobody from
13   the detention facility contacted her to inform her that her son
14   was transferred to the hospital until three weeks after his
15   transport, when Mineau informed her that Decedent was released.
16   (Id. ¶ 41.)  Shortly thereafter, Decedent died of gastronomical
17   complications.

18   ///
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///

26
27   [4] Plaintiff's complaint states 2010, however, such a date
     would be inconsistent with the relevant time line.  The court
     therefore infers that, based on the time line of actual events,
28   that actual date was 2009.

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),[5] all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the [. . .] claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009) (quoting <u>Twombly</u>, 550 U.S. at 555).

///
///
///
///
///

---

[5] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

7

"Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2). . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

///
///
///
///
///

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Eminence Capital, 316 F3d at 1052 (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (internal citations and quotations omitted).

**ANALYSIS**

**A.   Plaintiff's § 1983 claims**

Defendants contend that none of Plaintiff's § 1983 claims against Mineau in either his individual, or his supervisory capacity are cognizable because Plaintiff has failed to allege any violations of Decedent's or Plaintiff's federally guaranteed rights.

///
///

9

Specifically, Defendants contend that Plaintiff has failed to state facts sufficient to show that Mineau was deliberately indifferent to Decedent's serious medical needs such that the court could infer a plausible constitutional violation.  (See MTD at 3:22-6:12.)  Defendants further contend that Plaintiff's Section 1983 claims also fail against the County of Lassen because: (1) Plaintiff has improperly brought her first four § 1983 claims on behalf of Decedent for his pain and suffering and (2) Plaintiff fails to adequately plead the existence of a policy to establish Monell liability.  (See Id. at 9:4-13-21.) Plaintiff counters that the circumstantial evidence, as pled by the TAC, is sufficient for the court to infer that Mineau was deliberately indifferent to Plaintiff's serious medical needs, and the County's failure to train caused Plaintiff's constitutional deprivation such that the motion to dismiss should be denied in accordance with the standard governing dismissal under Rule 12(b)(6).

 The court examines Plaintiff's § 1983 claims in three parts: (1) Plaintiff's individual liability claims against Mineau; (2) Plaintiff's supervisory liability claims against Mineau; and (3) Plaintiff's Monell liability claims against Lassen County. The court will then analyze Plaintiff's state law claims.

///

///

///

///

///

///

1        **1.   Individual Liability**[6]

2

3        As opposed to prisoner claims under the Eighth Amendment, a

4   <u>pretrial</u> detainee is entitled to be free of cruel and unusual

5   punishment under the due process clause of the Fourteenth

6   Amendment.  <u>Bell v. Wolfish</u>, 441 U.S. 520, 537 n. 16; <u>Simmons v.</u>

7   <u>Navajo Cnty., Ariz.</u>, 609 F.3d 1011, 1017-18 (9th Cir. 2010).  A

8   pretrial detainee's due process right in this regard is violated

9   when a jailer fails to promptly and reasonably procure competent

10  medical aid when the pretrial detainee suffers a serious illness

11  or injury while confined.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-

12  105 (1976).  In order to establish a plausible claim for failure

13  to provide medical treatment, Plaintiff must plead sufficient

14  facts to permit to court to infer that (1) Decedent had a

15  "serious medical need that (2) Mineau was "deliberately

16  indifferent" to that need.  <u>Jett v. Penner</u>, 439 F.3d 1091, 1096

17  (9th Cir. 2006); <u>Cf.</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 837

18  (1994).  A serious medical need exists when "failure to treat a

19  prisoner's condition could result in further significant injury

20  or the unnecessary and wanton infliction of pain.  <u>Jett</u>, 439 F.3d

21  at 1096 (internal citations and quotations omitted).

22  ///

23

---

24        [6] As the court noted in its previous memorandum and order,
"There is no longer a need to bring official-capacity actions
25  against local government officials, for . . . local government
units can be sued directly for damages and injunctive relief.
26  (ECF No. 38 at 8:25-28 [<u>quoting</u> <u>Kentucky v. Graham</u>, 473 U.S. 159,
166 (1985)].)  Thus, as the court held in its previous order
27  dismissing Plaintiff's claims against Sheriff Warren, all of
Plaintiff's claims against Mineau in his official capacity are
28  hereby dismissed with prejudice.

1    The Supreme Court, in <u>Farmer</u>, explained in detail the
2    contours of the "deliberate indifference" standard.
3    Specifically, Mineau is not liable under the Fourteenth Amendment
4    for his part in allegedly denying necessary medical care unless
5    he knew "of and disregard[ed] an excessive risk to [Mineua's]
6    health or safety" <u>Id.</u> at 837.  Deliberate indifference contains
7    both an objective and subjective component: "the official must
8    both be aware of facts from which the inference could be drawn
9    that a substantial risk of serious harm exists, and he must also
10   draw that inference." <u>Id.</u>  Plaintiff "need not show that a
11   prison official acted or failed to act believing that harm
12   actually would befall an inmate; it is enough that the official
13   acted <u>or failed to act</u> despite his knowledge of a substantial
14   risk of serious harm." <u>Id.</u> at 842 (emphasis added).  Important
15   for purposes of this motion, "[w]hether a prison official had the
16   requisite knowledge of a substantial risk is a question of fact
17   subject to demonstration in the usual ways, <u>including inference</u>
18   <u>from circumstantial evidence</u>, and a fact finder may conclude that
19   a prison official knew of a substantial risk from the very fact
20   that the risk was obvious." <u>Id.</u> (emphasis added) (internal
21   citations ommitted).  According to the Supreme Court, this
22   standard "sends a clear message to prison officials that their
23   affirmative duty under the Constitution for the safety of inmates
24   is not to be taken lightly.  <u>Id.</u> at 852 (Blackmun, J.,
25   concurring).
26   ///
27   ///
28   ///

1   The court finds unavailing Defendants' contentions that the

2   TAC lacks sufficient allegations to support any[7] of Plaintiff's

3   § 1983 claims in his individual capacity.  Specifically, based on

4   all the circumstances as alleged, the court can reasonably infer

5   that Mineau was deliberately indifferent to Decedent's serious

6   medical needs.  The circumstantial facts, as alleged, that are

7   relevant to Mineau are as follows: he had knowledge of Decedent's

8   history based on the fact that he "worked as the undersheriff of

9   Lasssen County during the incidents that are described . . .

10  [and] gave testimony to set the bail for Michael Parker at

11  $150,000 on a misdemeanor offense" (Compl ¶ 6, 33); Mineau knew

12  Plaintiff and has intimate knowledge of decedent's history with

13  the County (See Id. ¶¶ 33, 41.); Decedent's doctor sent a letter

14  explaining that Decedent should be put on house arrest as opposed

15  to detention because of his serious medical condition (Id. ¶ 23);

16  during a previous confinement at the facility, Decedent had to be

17  admitted to the hospital for emergency surgery (Id. ¶ 20); during

18  previous detainments, Decedent put in numerous requests to see

19  the doctor (Id. ¶ 18); when Nancy Schwartz visited her son, she

20  requested that he be released for medical attention (Id. ¶ 36-

21  37); within just two weeks of detention, Decedent had lost over

22  forty pounds (Id. ¶ 38);

23

24      [7] As set forth below, Plaintiff's first through fourth
    claims under § 1983 are dismissed with leave to amend as they are
25  improperly brought on behalf of Decedent for his pain and
    suffering.  In reaching this conclusion, however, the court does
26  not hold that these claims should be dismissed for faiCure to
    allege sufficient facts to state a claim for deliberate
27  indifference; rather, the claims are simply pled improperly on
    behalf of Decedent.  Moreover, this analysis in no way affects
28  Plaintiff's eleventh claim for deprivation of familial
    relationship under § 1983.

1   when Plaintiff asked her son "why he had not seen a doctor[] he
2   stated to her that the staff had said to him to "quit complaining
3   and make the best of it" (Id. ¶ 39); ultimately, and although he
4   was not able to make bail, Decedent had to be released from the
5   facility and admitted to the hospital because his health was
6   failing so quickly. (Id. ¶ 40); Although Mineau knew of
7   Decedent's relocation, did not contact Plaintiff when her son was
8   transported from the Facility to the hospital (Id. ¶ 41.)
9   Finally, Plaintiff alleges that "Mineau personally knew that
10  [Decedent] was seriously and critically ill, that incarceration
11  posed a substantial risk of serious harm if not treated and
12  refused to implement any policy or protocol at the [Facility] to
13  provide for the prompt response to serious medical needs." (Id.
14  at 53.)

15      Based on the these facts, which the court must accept as
16  true, the court can reasonably infer that it was certainly
17  plausible that Mineau knew of, and failed to respond to,
18  Decedent's serious medical condition.  This conclusion is
19  supported by the fact that, "[t]he common jails in the several
20  counties of [California] are kept by the sheriffs of the counties
21  in which they are respectively situated."  Cal. Penal Code
22  § 4000.  Based on the Sheriff Department's unique position in
23  relation to the facility, and the circumstances as alleged —
24  especially Mineau's intimate knowledge of Decedent's case — the
25  court can reasonably infer that it is plausible that Mineau was
26  deliberately indifferent to Decedent's serious medical needs.
27  ///
28  ///

14

1    As a point of reference, the court notes the factual

2 similarities between this case and Martin v. Board of Cnty.

3 Comm'r of Cnty. Of Pueblo, 909 F.2d 402 (10th Cir. 1990).   In

4 Martin, Plaintiff brought a civil rights suit under § 1983 for

5 disregard of medical needs during pretrial detention.   Prior to

6 plaintiff's transportation to county jail, a physician warned the

7 transporting officers of the significant risk of injury "should

8 she be moved other than by wheelchair or gurney, and that she was

9 to be released only to the care of her parents."   Id. at 404.

10 The physician requested that, at the very least, the transporting

11 officers "contact plaintiff's attending physician before moving

12 her."   Id.   The officers ignored the warning and plaintiff's neck

13 injury was allegedly aggravated during transportation.   Id.   In

14 upholding the district court's denial of defendants' motion for

15 summary judgment on qualified immunity grounds, the court held

16 that the evidence "raised factual questions whether defendants

17 deliberately disregarded the medical information and warnings

18 given by plaintiff's mother regarding her daughter's serious,

19 fragile condition, and refused her request that they contact the

20 attending physician for instructions before moving plaintiff."

21 Id. at 406.   Similarly, here, Plaintiff has alleged sufficient

22 facts to survive defendants' motion for summary judgment based on

23 her allegations that Mineau and other prison officials

24 deliberately disregarded the letter Plaintiff's physician wrote

25 explaining that, because of his serious medical condition, he

26 should not be detained at the facility.

27 ///

28 ///

15

1    The court further finds Defendants' three main arguments

2  that the facts, as alleged, are insufficient to survive dismissal

3  unconvincing.  Specifically, the court refers to Defendants'

4  contentions that: (1) Mineau's statements during the bond hearing

5  are irrelevant because "[a] law enforcement officer can only be

6  held liable for . . . excessive bail 'if they prevented the

7  [judicial officer] from exercising his independent judgment'"

8  (MTD at 5:1-3 [quoting Muhammad v. San Diego County Sheriff's

9  Dep't., 2008 WL 821832 *2 (S.D. Cal. 2008)]); (2) Plaintiff's

10 allegation that Mineau refused to implement a policy of providing

11 a prompt response to medical needs is belied by a previous

12 statement alleging that there is a policy of requiring inmates to

13 submit written requests for medical care (Id. at 5:6-16);

14 (3) Plaintiff's claim for loss of familial relationship is not

15 cognizable because Plaintiff did not plead that Mineau's conduct

16 "shocked the conscience" (Id. at 5:26-6:12.)

17    First, while Defendants correctly state the law concerning a

18 law enforcement officer's potential liability for excessive bail,

19 they fail to correctly apply it.  Specifically, the issue is

20 whether Mineau knew of, and failed to address Decedent's medical

21 condition, not whether Mineau is directly liable for the

22 excessive bail.  In this regard, Mineau's testimony is relevant

23 as it tends to show that Mineau had extensive knowledge of

24 Decedent's history and detainment at the facility.

25 ///

26 ///

27 ///

28 ///

16

1  Even if the latter question were the relevant one here, if, as
2  Plaintiff alleges, Mineau purposefully distorted his testimony
3  for purposes of obtaining a higher bail, the court could
4  undoubtedly infer that he "prevented the [judicial officer] from
5  exercising his independent judgment."  <u>Muhammad</u>, 2008 WL 821832
6  *2 (<u>quoting</u> <u>Galen v. County of Los Angeles</u>, 477 F.3d 652, 659
7  (9th Cir. 2007).)

8      Second, Defendants' contention that Plaintiff admitted there
9  was indeed a medical policy in place is a non-sequitur.
10 Specifically, whether there was a specific policy of requiring
11 written submissions for medical care has no bearing on whether
12 Mineau is potentially liable in his personal capacity for being
13 deliberately indifferent to Decedent's serious medical needs.  In
14 other words, Defendants are simply applying the incorrect
15 standard to the issue of Mineau's liability in his individual
16 capacity.

17     Defendants' third arguments are similarly misplaced.
18 Specifically, Plaintiff need not actually state the words
19 "Defendant's conduct shocked the conscience"; she is merely
20 required to plead facts which could plausibly demonstrate that
21 Defendant was deliberately indifferent to Plaintiff's medical
22 needs.  Defendants' reliance on <u>Moreland v. Las Vegas Metro.</u>
23 <u>Police Dep't.</u>, 159 F.3d 365, 372 (9th Cir. 1998) is misplaced.
24 Specifically, <u>Moreland</u> involved a substantive due process claim
25 arising out of a police shooting, not a claim for failure to
26 provide medical care.

27 ///
28 ///

17

1  Indeed, the very authority Defendants rely upon specifically
2  states that "Eighth Amendment claims based on medical care are
3  governed by [a] different culpability standard than claims
4  involving harm inflicted by officers responding to . . .
5  disturbances."  Id. at 372 (citing Whitley v. Albers, 475 U.S.
6  312, 320-321 (1986)).

7       In sum, the court concludes that, at this point in the
8  litigation, without substantial discovery, and where the court
9  must draw all inferences in favor of Plaintiff, the TAC contains
10 sufficient factual allegation for the Court to infer that
11 Mineau's deliberate indifference to Decedent's serious medical
12 needs resulted in Decedent's constitutional deprivation.

13
14          2.   **Supervisory Liability**
15

16      Plaintiff contends that Mineau is also liable for Decedent's
17 constitutional deprivation in his supervisory capacity because he
18 "knew of the blatant disregard of [Decedent's] serious medical
19 need and he participated in keeping [Decedent] in jail to deprive
20 him of medial care and knew that he should have been released to
21 obtain medical care."  (Pl.'s Opp'n, filed Sept. 22, 2011
22 [ECF No. 50] at 6:4-9.)  Defendants do not specifically address
23 Plaintiff's argument that Mineau is liable for Decedent's alleged
24 constitutional deprivation in his supervisory capacity.  Instead,
25 Defendants rely on the same argument asserted in support of its
26 contention that Mineau is not liable in his individual capacity
27 — Plaintiff has not alleged sufficient facts to implicate Mineau
28 in the deprivation of Decedent's Fourteenth Amendment rights.

                                  18

1    State officials are "persons" within the meaning of § 1983.

2  Hafer v. Melo, 502 U.S. 21, 22 (1991).  As such, prison officials

3  may be sued in their individual capacity for damages resulting

4  from an alleged violation of a prisoner's Constitutional rights

5  under § 1983.  Id.  Individual capacity suits "seek to impose

6  individual liability upon a government officer for actions taken

7  under color of state law." Id. at 25.  Government officials may

8  not be held liable for the unconstitutional conduct of their

9  subordinates under a theory of respondeat superior.  Iqbal,

10 129 S. Ct. at 1948.  Rather, each government official may only be

11 held liable for his own misconduct.  Bowell v. Cal. Substance

12 Abuse Treatment Facility, No. 1:10-CV-02336-AWI-DLB PC, 2011 WL

13 2224817, at *4 (E.D. Cal. June 7, 2011).

14    However, government officials acting as supervisors[8] may be

15 liable under § 1983 under certain circumstances.  A defendant may

16 be held liable as a supervisor under § 1983 if there exists

17 either (1) his or her personal involvement in the Constitutional

18 deprivation, or (2) a sufficient causal connection between the

19 supervisor's wrongful conduct and the Constitutional violation.

20 Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).  Thus, § 1983

21 actions against supervisors are proper as long as a sufficient

22 causal connection exists and the plaintiff was deprived under

23 color of law of a federally secured right.  Starr v. Baca,

24 633 F.3d 1191, 1196 (9th Cir. 2011) (quoting Redman v. Cnty. of

25 San Diego, 942 F.2d 1435, 1447 (9th Cir. 1991)).

26 ///

27 _____

28    [8] Defendants do not contest that Mineau is a "supervisor"
for purposes of supervisory liability under § 1983.

19

1    The requisite causal connection between a supervisor's
2  wrongful conduct and the violation of the prisoner's
3  Constitutional rights can be established in a number of ways.
4  The plaintiff may show that the supervisor set in motion a series
5  of acts by others, or knowingly refused to terminate a series of
6  acts by others, which the supervisor knew or reasonably should
7  have known would cause others to inflict a Constitutional injury.
8  Dubner v. City of S.F., 266 F.3d 959, 968 (9th Cir. 2001).
9  Similarly, a supervisor's own culpable action or inaction in the
10 training, supervision, or control of his subordinates may
11 establish supervisory liability.  Starr, 633 F.3d at 1197.
12 Finally, a supervisor's acquiescence in the alleged
13 constitutional deprivation, or conduct showing deliberate
14 indifference toward the possibility that deficient performance of
15 the task may violate the rights of others, may establish the
16 requisite causal connection.  Id.; Menotti v. City of Seattle,
17 409 F.3d 1113, 1149 (9th Cir. 2005).
18    In this case, based on two of the aforementioned theories,
19 Plaintiff's complaint contains sufficient factual allegations to
20 establish a causal connection between Mineau's allegedly wrongful
21 conduct and the constitutional violation such that it survives
22 Defendants' motion to dismiss.  First, the complaint contains
23 sufficient factual allegations to permit the court to reasonably
24 infer that Mineau plausibly refused to terminate a series of acts
25 by his subordinates, which the supervisor knew or reasonably
26 should have known would cause others to inflict a Constitutional
27 injury.
28 ///

Specifically, Plaintiff alleges that Decedent's physical health was visibly deteriorating, that he had requested medical care on numerous occasions, that Mineau knew of his deteriorating health but, as undersheriff of Lassen County, failed to ensure that the Facility provided him sufficient medical care.  Moreover, based on these same facts, the court can reasonably infer that Mineau plausibly acquiesced in the alleged constitutional deprivation and was deliberately indifferent to the possibility that his subordinates deficiently performed in providing Decedent necessary medical care.

In sum, at this stage of the litigation, in which little to no discovery[9] has been conducted, and where all reasonable inferences must be drawn in favor of Plaintiff, the Court cannot conclude that, based on the facts as alleged, Plaintiff has no plausible claim that Mineau is liable under Section 1983 for Plaintiff's constitutional deprivation in either his individual or supervisory capacity.

///
///
///
///
///

_____

[9] The court notes that fully-developed discovery — particularly Mineau's deposition — is necessary for the ultimate resolution of Plaintiff's § 1983 claims against Mineau.  For example, discovery may reveal that Mineau indeed had intimate knowledge of Decedent's deteriorating health but did nothing to insure adequate medical care, which would militate in favor of Plaintiff's claims; conversely, discovery may reveal that it would have been impossible for Mineau to know of Decedent's health, which would militate in favor of denying Plaintiff's claim.

1        **3.   Monell Liability[10] Against Lassen County**

2

3        Defendants tether their contention that Plaintiff has failed

4   to allege sufficient facts to permit the Court to infer that the

5   County plausibly is liable under § 1983 on a theory of Monell

6   liablility to the fact that Plaintiff only alleges a single

7   incident in which a pretrial detainee at the Facility has been

8   denied adequate medical care.   (See MTD at 10-11; see also Def.'s

9   Reply, filed Sept. 29, 2011 [Ecf No. 52], at 6-7.)   Specifically,

10  defendants argue that, since "sporadic or isolated incidents are

11  not a sufficient basis to state a Section 1983 claim," and

12  Plaintiff fails to point to any instances — besides the single

13  incident of Decedent's passing — "that would support an

14  inference that a custom of deliberate indifference to serious

15  medical conditions existed in the County," Plaintiff's claims

16  against the County must be dismissed.

17  ///

18  ///

19  ///

20  ///

21  _____

22        [10] The Court previously denied Defendants' motion to dismiss
    Plaintiff's claims based on failure to provide medical care "to
23  the extent these causes of action seek to recover for injuries
    Parker sustained while incarcerated as a pre-trial detainee."
24  (ECF No. 38 at 13:21-23.)   However, those claims only survived
    because "the County d[id] not challenge the factual underpinnings
25  of the claims themselves and instead attack[ed] only Plaintiff's
    misidentification of the proper constitutional amendment."   (Id.
26  at 13:26-28.)   Defendants now contend that Plaintiff has not
    alleged sufficient facts to establish liability against the
27  County under the Fourteenth Amendment.   Thus, the Court now, for
    the first time, addresses the substantive merits of Plaintiff's
28  factual allegations in this regard.

                                      22

1   Plaintiff responds that, based on the particularly egregious
2   nature of the facts as alleged, Plaintiff has alleged a custom of
3   failure to train, supervise or discipline employees who fail to
4   provide medical care to an incarcerated pretrial detainee
5   sufficient to withstand a motion to dismiss.

6        Defendants also maintain that, because claims one through
7   four, "pursuant to Section 1983, ple[d] o[n] behalf of the
8   Estate[,] seek damages for pain and suffering, those [claims]
9   should be dismissed."  (MTD at 10:1-2.)  In support of this
10  proposition, Defendants cite to a number of holdings from the
11  Eastern District of California Defendants maintain proscribe
12  survivors from recovering damages for a Decedent's pain and
13  suffering.  Plaintiff does not directly address Defendants'
14  contention; instead, Plaintiff merely declares that she "believes
15  that the reasoning and legal analysis" of Defendants and the
16  cases Defendants rely on "do[] not preclude the kind of wrongful
17  death suffered."  (Pl.'s Opp'n at 10:11-16.)

18       The court finds unavailing Defendants' contention that the
19  allegations supporting Plaintiff's § 1983 claims do not state
20  sufficient facts to allow the Court to infer that Lassen County
21  plausibly had an official policy or custom that caused the
22  alleged constitutional deprivation.  Municipalities or local
23  governments cannot be vicariously liable for employee conduct
24  under § 1983, but rather are only "responsible for their own
25  illegal acts."  Connick v. Thompson 131 S. Ct. 1350, 1359 (2011)
26  (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986).)
27  ///
28  ///

23

1  In other words, a municipality may only be liable where it
2  individually causes a constitutional violation via "execution of
3  a government's policy or custom, whether by its lawmakers or by
4  those whose edicts or acts may fairly be said to represent them."
5   Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978);
6  Ulrich v. City & County of San Francisco, 308 F.3d 968, 984
7  (9th Cir. 2002).  "Official municipal policy includes the
8  decisions of a government's lawmakers, the acts of its
9  policymaking officials, and practices so persistent and
10 widespread as to practically have the force of law."  Connick,
11 131 S. Ct. at 1359.

12     Complete inadequacy of training may amount to a policy
13 giving rise to Monell liability; however, "adequately trained
14 officers occasionally make mistakes; the fact that they do says
15 little about the training program or the legal basis for holding
16 the [municipality] liable."  City of Canon v. Harris, 489 U.S.
17 378, 379 (1989).  It therefore follows that, a claim of
18 inadequate training is only cognizable under Section 1983 "where
19 that city's failure to train reflects deliberate indifference to
20 the constitutional rights of its inhabitants."  Id. at 392.
21 In sum, "Plaintiff can allege that through its omissions the
22 municipality is responsible for a constitutional violation
23 committed by one of its employees, even though the municipality's
24 policies were facially constitutional [and] the municipality did
25 not direct the employees to take the unconstitutional action," as
26 long as the court may infer that those omissions amounted to a
27 deliberate indifference to Plaintiffs' constitutional rights.
28 Gibson, 290 F.3d at 1193-94.

1    Defendants' argument is on point in one regard: generally
2    speaking, in order to prove deliberate indifference, it is
3    "ordinarily necessary" to demonstrate "a pattern of similar
4    constitutional violations by untrained employees." Connick,
5    131 S. Ct. at 1360 (citing Bryan Cnty Com'rs of Bryan Cnty
6    Okl. v. Brown, 520 U.S. 397, 409 (1997)).  However, the Supreme
7    Court, in Connick, recently affirmed the validity of the
8    so-called "single-incident" theory.  Specifically, in Connick,
9    the court affirmed that, under City of Canton, Ohio v. Harris,
10   489 U.S. 378 (1989), a particular "showing of 'obviousness' can
11   substitute for the pattern of violations ordinarily necessary to
12   establish municipal liability." Connick, 131 S. Ct. at 1361.
13   However, Connick took care to note that it is only "'in a narrow
14   range of circumstance' [that] a pattern of similar violations
15   might not be necessary to show deliberate indifference." Id.
16   (quoting Bryan Cnty, 520 U.S. at 409.)  A violation of a
17   protected right must be a "highly predictable consequence" of a
18   failure to train.  Id.  Connick explained that the "single-
19   incident" theory represents the Supreme Court's refusal to
20   "foreclose upon the possibility" that the failure to train is so
21   patently obvious that a single constitutional violation suffices
22   to give rise to municipal liability under § 1983.  Id.

23       In this case, the Court finds that, based on the allegations
24   in the complaint, it is plausible that the failure to train was
25   so obviously deficient that it could lead to liability resulting
26   from the single constitutional deprivation at issue here.
27   ///
28   ///

25

1   In other words, the court can reasonably infer that, based on the
2   particular circumstances as alleged, the facility's employees so
3   obviously lacked training in providing proper medical care that
4   it resulted in Decedent's death and, consequently, Plaintiff's
5   loss of her son's companionship.  Specifically, as alleged,
6   Decedent visibly lost forty pounds; directly requested, and was
7   refused, medical care; and previously had medical complications
8   while detained at the Facility.  These allegations are compounded
9   by Plaintiff's assertion that Decedent's physician sent a letter
10  explaining that, because of Decedent's severe medical condition,
11  he should not be detained at the Facility, but rather should be
12  placed in the care of his mother.  Thus, at this stage of the
13  litigation, absent more fully-developed facts, the Court declines
14  to dismiss Plaintiff's § 1983 claims on the basis that Plaintiff
15  has only alleged a single incident of failure to provide medical
16  care.[11]

17       While the court finds that Plaintiff's <u>first four</u> claims
18  state a plausible claim to withstand 12(b)(6) dismissal with
19  regard to <u>Monell</u> liability, those claims fail on other grounds.
20  Specifically, "[t]he Eastern District has consistently held that
21  § 377.34 [of the California Code of Civil Procedure] is not
22  inconsistent with Section 1983, and has thus barred survivor
23  claims for pain and suffering damages under Section 1983."
24  ///

25  ───────────────────────
26       [11] Defendants are free to re-assert their "single-incident"
    theory at the summary judgment stage as further discovery will
    shed light on the specific circumstances that led to Decedent's
27  death.  However, at this stage of the litigation, and based on
    the nature of the allegations, that argument does not convince
28  the Court that outright dismissal is appropriate.

1   <u>Estate of Contreras ex rel. Contreras v. Cnty of Glenn</u>,

2   725 F. Supp. 2d 1161 (E.D. Cal. 2010).  This trend began with

3   <u>Venerable v. City of Sacramento</u>, 185 F. Supp. 2d 1128, 1133

4   (E.D. Cal. 2002), which held that, "[b]ecause state law does not

5   permit recovery of a decedent's pain and suffering, [Plaintiff's]

6   claim for pain and suffering from injury leading to death does

7   not survive and will be dismissed."  <u>Id.</u>  However, "[i]t is

8   [also] well established in the Ninth Circuit that a 'parent has a

9   constitutionally protected liberty interest in the companionship

10  and society of his or her child" that is violated when a

11  defendant is deliberately indifferent to that right.  <u>Id.</u> at 1131

12  (quoting <u>Ward v. City of San Jose</u>, 967 F.2d 280, 283 (9th Cir.

13  1998).

14      In this case, each of Plaintiff's first four claims rely on

15  Plaintiff's allegations that the County's "complete failure to

16  train was the actual and proximate cause of [Decedent's]

17  unnecessary and <u>wanton infliction of pain and physical injury</u>."

18  (<u>See</u> TAC ¶ 73; <u>see</u> <u>also</u> <u>Id.</u> ¶¶ 80, 89, 95 [describing Decedent's

19  pain and anguish]) (emphasis added).  While Plaintiff may recover

20  where the failure to train resulted in Decedent's death, and

21  thus, the deprivation of Plaintiff's liberty interest in the

22  companionship of her child, she is precluded from recovering for

23  her deceased child's pain and suffering.

24  ///

25  ///

26  ///

27  ///

28  ///

As such, Plaintiff's first, second, third and fourth claims, the essence of which consist of Decedent's pain and suffering, are hereby dismissed <u>with leave to amend.</u>[12]

### B.   Plaintiff's State Law Claims

#### 1.   Plaintiff's Tenth Claim — California Civil Code § 52.1

In its memorandum and order on Plaintiff's motion to dismiss Plaintiff's Second Amended Complaint, the court dismissed Plaintiff Tenth Cause of Action for violation of California Civil Code § 52.1 because "the setting of a bond, without more, cannot be viewed as intimidation or coercion, nor does a passing comment, though insensitive, that [Decedent] should learn to 'make the best of it' rise to the level of a threat."  (ECF No. 38 at 20:1-6.)  Plaintiff amended her complaint to state that <u>she</u> "was threatened with the further imprisonment of her son, the further denial of medical treatment if she continued to request visitation with him or further phone calls with him."  (TAC ¶ 127.)  Defendants now maintain that Plaintiff has not sufficiently amended her complaint to demonstrate sufficient threat or coercions by Defendants to withstand dismissal of the claim.

///

///

///

---

[12] Plaintiff's eleventh claim under § 1983, is brought not to recover for Decedent's pain and suffering, but rather on her own behalf for loss of familial relationship.  Thus, Plaintiff's eleventh claim for relief survives.

Plaintiff <u>again</u> takes the position her allegations are sufficient here because Parker's bond was set purposefully high, which intimidated Parker by forcing his incarceration, and that Parker was threatened when jail staff responded to his medical complaints by telling him to quit complaining and make the best of it.

As the Court previously held, Plaintiff's repeated allegations are simply insufficient to give rise to a claim under Section 52.1.  Moreover, liability pursuant to Section 52.1 is "limited to plaintiffs who themselves have been the subject of violence and threats."  <u>Bay Area Rapid Transit v. Sup. Ct.</u>, 38 Cal. App. 4th 141, 145 (1995).  The complaint in this case, however, states that the alleged "threats" and "violence" were directed at Decedent.  Based on the foregoing, Defendants' motion to dismiss Plaintiff's Tenth claim for relief is granted without leave to amend.

> **2.    Plaintiff's eighth, ninth, twelfth and thirteenth claims — Negligent Infliction of Emotional Distress & Intentional Infliction of Emotional Distress**

Defendants contend that Plaintiff's eighth and ninth claims for negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED"), brought <u>on behalf of Decedent</u>, should be dismissed because claims for NIED and IIED can only be brought in Plaintiff's individual capacity.

///

///

///

1   Defendants further maintain that Plaintiff's twelfth and
2   thirteenth claims against the County should be dismissed because
3   public entities cannot be liable under these common law theories
4   of recovery.  Finally, Defendants assert that Plaintiff's twelfth
5   and thirteenth claims against Mineau should be dismissed for
6   failure to state sufficient facts to give rise to either an NIED
7   or IIED claim.

8       Plaintiff does not specifically address Defendants' various
9   arguments with regard to her NIED and IIED claims.  Instead,
10  Plaintiff submits a blanket argument that the "emotional scarring
11  suffered by the Plaintiff is adequately pled."  (Opp'n at 9:5.)
12  Specifically, Plaintiff avers that Mineau's refusal to provide
13  Decedent medical care and failure to inform Plaintiff that
14  Decedent was transferred to the hospital "shocks the conscience."
15  (Id. at 10:1-9.)

16      First, Defendants seek to dismiss Plaintiff's eighth and
17  ninth claims which Plaintiff brings to redress the psychological
18  and physical harm Decedent suffered as result of Defendants
19  alleged failure to provide adequate medical care.  (See TAC
20  ¶¶ 119, 121.)  Under California law, an estate's tort claims for
21  emotional distress do not survive the death of Decedent.
22  Specifically, under California law:

23          [i]n an action or proceeding by a decedent's personal
            representative or successor in interest on the
24          decedent's cause of action, the damages recoverable are
            limited to the loss or damage that the decedent
25          sustained or incurred before death, including any
            penalties or punitive or exemplary damages that
26          decedent would have been entitled to recover had the
            decedent lived, and *do not include damages for pain,*
27          *suffering, or disfigurement.*

28  ///

30

1  Cal. Civ. Proc. Code § 377.34 (emphasis added).  The Ninth

2  Circuit recently affirmed this rule, upholding with the District

3  Court's conclusion that, "under California law, the Estate's tort

4  claims for emotional distress did not survive the death" of

5  Decedent.  Martin v. California Dept. of Veteran Affairs,

6  560 F.3d 1042, 1050-51 (9th Cir. 2009).  Because Plaintiff's

7  eighth and ninth claims are brought solely on behalf of Decedent,

8  those claims are dismissed without leave to amend.

9        Second, the Court finds that the public entity Defendants'

10 contention that Plaintiff's twelfth and thirteenth California

11 common law causes of action must be dismissed is well-taken.

12 In California, "[e]xcept as otherwise provided by statute . . .

13 [a] public entity is not liable for any injury, whether such

14 injury arises out of an act or omission of the public entity or

15 a public employee or any other person."  Cal. Gov. Code

16 § 815(a).  The Legislative Committee Comment to Section 815

17 states, "This section abolishes all common law or judicially

18 declared forms of liability for public entities, except for

19 such liability as may be required by the state or federal

20 constitution, e.g., inverse condemnation.  In the absence of a

21 constitutional requirement, public entities may be held liable

22 only if a statute...is found declaring them to be liable."

23 Accordingly, "the exclusive basis of public entity tort

24 liability is statutory."  Tolan v. State of California ex rel.

25 Dept. of Transportation, 100 Cal. App. 3d 980, 986 (1979).

26 Plaintiff raises no argument in opposition to the entity

27 Defendants' Motions to Dismiss her NIED and IIED claims, which

28 are therefore dismissed without leave to amend.

31

1    The Court, however, finds unavailing Defendants'
2  contention that Plaintiff's twelfth claim for NIED against
3  Mineau should be dismissed for failure to allege that Mineau
4  owed Plaintiff a duty.  NIED claims are merely a species of
5  negligence, and thus, a Plaintiff asserting an NIED claim must
6  show that the defendant owed the plaintiff a duty of care.
7  Lawson v. Mgmt. Activities, 69 Cal. App. 4th 652, 656 (1999).
8  Plaintiff specifically alleges that, under California law, the
9  county Sheriff has a broad and affirmative duty to "keep the
10 county jail and the prisoners in it, and is answerable for the
11 prisoner's safekeeping."  (Pl.'s Opp'n at 6:10-16 [citing Cal.
12 Gov't Code §§ 26605, 26610; Brandt v. Bd. of Supervisors,
13 84 Cal. App. 3d 598, 601; Cal. Penal Code §§ 4000, 4006].)
14 Contrary to Defendants' contention, Plaintiff has specifically
15 alleged that the Sheriff, and by implication, undersheriff
16 Mineau, owed Decedent as a detainee at the Lassen County jail a
17 duty.  If Mineau wishes to contest this duty, he is free to do
18 so at the summary judgment stage; at this stage, however,
19 Plaintiff has alleged sufficient facts to withstand a motion to
20 dismiss.

21    Conversely, the Court finds persuasive Defendants'
22 contention that Plaintiff has failed to allege a prima facie
23 case for IIED, Plaintiff's thirteenth claim against Mineau.
24 "The elements of a prima facie case for the tort of intentional
25 infliction of emotional distress are:
26 ///
27 ///
28 ///

32

1   (1) extreme and outrageous conduct by the defendant with the
2   intention of causing, or reckless disregard of the probability
3   of causing, emotional distress; (2) the plaintiff's suffering
4   severe or extreme emotional distress; and (3) actual and
5   proximate causation of the emotional distress by the
6   defendant's outrageous conduct." Cervantez v. J.C. Penney Co.,
7   24 Cal. 3d 579, 593 (1979) (overturned on other grounds).
8   Under California law, "the rule which seems to have emerged is
9   that there is liability for conduct exceeding all bounds
10  usually tolerated by a decent society, of a nature which is
11  especially calculated to cause and does cause, mental distress
12  of a very serious kind." Ochoa v. Superior Court, 39 Cal. 3d
13  159, 166 n.5 (1985) (emphasis in original).

14       Plaintiff paints with too broad a conclusory brush in
15  support of her intentional infliction of emotional distress
16  claim against Mineau.  Specifically, Plaintiff's statement in
17  opposition to the motion that the "standard is met when
18  Undersheriff John Mineau refused medical care for Michael
19  Parker and then failed and refused to allow his mother to
20  visit" simply does not suffice to demonstrate that Mineau's
21  conduct was especially calculated to cause Plaintiff severe
22  emotional distress. (Pl.'s Opp'n at 10:7-9.)  Indeed, in
23  Ochoa, the California Supreme Court sustained a demurrer to
24  plaintiff's IIED claims in an abundantly similar factual
25  setting.  Specifically, in Ochoa, plaintiff's son died after
26  she observed his health visibly deteriorate while the staff at
27  the juvenile facility he was detained at refused to provide him
28  appropriate medical care.  Id. at 162-165.

1   As did the <u>Ochoa</u> court, the Court finds that Plaintiff simply

2   has not alleged sufficient facts to state a plausible IIED

3   claim against Mineau.  As such, Plaintiff's thirteenth claim

4   against Mineau is dismissed without leave to amend.

5

6        **C.    Plaintiff's Claims for Punitive Damages**

7

8        The Court previously dismissed Plaintiff's claims for

9   punitive damages with leave to amend.  (<u>See</u> ECF No. 38.)

10  Defendants again contend that Plaintiff's punitive damages

11  claim against the entity defendant is legally prohibited and

12  that Plaintiff has failed to allege that Mineau's conduct was

13  so outrageous as to justify punitive damages.  Plaintiff's

14  opposition fails to address Defendants' assertion that her

15  Punitive damages claims should be dismissed.

16       First, as the Court previously held, Defendants' arguments

17  are well-taken as to the entity Defendants because they are

18  immune from punitive damages liability as a matter of law.

19  Cal. Govt. Code § 818 ("Notwithstanding any other provision of

20  law, a public entity is not liable for damages awarded under

21  § 3294 of the Civil Code of other damages imposed primarily for

22  the sake of example and by way of punishing the defendant.");

23  <u>Newport v. Fact Concerts Inc.</u>, 453 U.S. 427, 271 (1981) ("[A]

24  municipality is immune from punitive damages under 42 U.S.C.

25  § 1983.")

26  ///

27  ///

28  ///

1  Moreover, while individual Defendants, such as Mineau, may be
2  liable for punitive damages under Section 1983 when "their
3  conduct is shown to be motivated by evil motive or intent,"
4  Plaintiff wholly fails to address Defendants' motion to dismiss
5  her claim for punitive damages.  <u>Smith v. Wade</u>, 461 U.S. 30, 56
6  (1983).  As such, Plaintiff's claim for punitive damages are
7  hereby dismissed without leave to amend.  Moreover, even if
8  Plaintiff had addressed Defendants' arguments, the Court also
9  finds that, as set forth above, Plaintiff's allegation simply
10 does not show that Mineau acted with "evil motive or intent."
11 <u>Id.</u>  As such, Defendants' motion to dismiss Plaintiff's claim
12 for punitive damages is dismissed without leave to amend.

**CONCLUSION**

16    For the reasons stated above, Defendants' Motions are
17 granted in part and denied in part, consistent with the
18 foregoing, as follows:
19    1.   Defendants' motion to dismiss Plaintiff's first,
20 second, third and fourth claims under § 1983 for decedent's
21 pain and suffering is GRANTED with leave to amend as to the
22 County and Mineau.
23    2.   Defendants' motion to dismiss Plaintiff's eighth and
24 ninth claims for NIED and IIED in her representative capacity
25 is GRANTED without leave to amend.
26    3.   Defendants' motion to dismiss Plaintiff's twelfth and
27 thirteenth claims for NIED and IIED against the County is
28 GRANTED without leave to amend.

35

1     4.    Defendants' motion to dismiss Plaintiff's twelfth

2 claim for NIED against Mineau is DENIED.

3     5.    Defendants' motion to dismiss Plaintiff's thirteenth

4 claim for IIED against Mineau is GRANTED without leave to

5 amend.

6     6.    Defendants' motion to dismiss Plaintiff's eleventh

7 claim under Section 1983 for deprivation of familial

8 relationship is DENIED.

9     7.    Plaintiff's entire complaint against Officer Vega is

10 dismissed without leave to amend.

11     8.    Defendant City of Susanville's motion to dismiss is

12 Plaintiff's first, second, third, fourth, eighth, ninth, tenth,

13 twelfth and thirteenth claims is  GRANTED without leave to

14 amend; Defendant City of Susanville's motion to dismiss

15 Plaintiff's Eleventh claim is DENIED.

16     9.    Plaintiff's claim for punitive damages is dismissed

17 against all Defendants without leave to amend.

18     IT IS SO ORDERED.

19

20 Dated: January 18, 2012

21

22                           MORRISON C. ENGLAND, JR.

23                           UNITED STATES DISTRICT JUDGE

24

25

26

27

28