1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9

10  NANCY SCHWARTZ on behalf of        No. 2:10-cv-03048-MCE-GGH
    herself individually as the
11  mother of MICHAEL PARKER,
    deceased; et al.,
12
            Plaintiffs,
13
        v.                            <u>MEMORANDUM AND ORDER</u>
14
    LASSEN COUNTY ex rel. the
15  LASSEN COUNTY JAIL (DETENTION
    FACILITY), et al.,
16
            Defendants.
17

18                    ----oo0oo----

19       Plaintiff Nancy Schwartz ("Plaintiff"), survivor of

20  decedent, Michael Parker ("Decedent"), on behalf of herself and

21  as successor-inp-interest to Decedent, seeks redress for several

22  federal and state law claims alleging that the County of Lassen

23  ("County"), Sheriff of Lassen County, Steven Warren ("Warren"),

24  Officer Ed Vega ("Vega"), The City of Susanville ("City"), the

25  Susanville Police Department ("Department"), and undersheriff

26  John Mineau ("Mineau") violated decedent's civil rights leading

27  up to, and during decedent's detainment at the Lassen County

28  Adult Detention Facility (the "Facility").

                              1

1    By Memorandum and Order signed August 1, 2011, this Court
2  granted in part Defendants' Motion to Dismiss Plaintiff's Second
3  Amended Complaint and granted Plaintiff leave to amend.
4  (See ECF No. 38.)  Presently before the court is the motion of
5  Defendants Mineau and the County to dismiss claims 1, 2, 3, 4, 8,
6  9, 11, 12 and 13 of Plaintiff's Third Amended Complaint[1] ("TAC")
7  pursuant to Federal Rule of Civil Procedure 12(b)(6).  (See
8  Def.'s Mot. to Dismiss Pl.'s Third Am. Compl. ["MTD"], filed
9  September 2, 2011 [ECF No. 43].)  Both the City and Officer Vega
10 joined in the motion to dismiss.
11 ///
12 ///
13 ///
14 ///

15

16    [1] As Plaintiff notes in her opposition, the TAC contains
   typographical errors in paragraphs 73, 76 and 80 in which she
17 states that her claims are brought under the Eighth Amendment, as
   opposed to the Fourteenth.  Defendants' moving papers acknowledge
18 this typo: "There is no allegation that either Ms. Schwartz or
   Mr. Parker suffered a post-conviction injury.  Nonetheless,
19 [P]laintiff pleads the Eighth Amendment For purposes of this
   motion, responding defendants will treat the alleged Eighth
20 Amendment violations as though they were [properly]stated under
   the Fourteenth Amendment," as does the Court.  (MTD at 1:4 n.2.)
21 Moreover, the Court notes that this distinction does not affect
   the Court's analysis — as described in detail below, the same
22 "deliberate indifference" standard is applied to claims for
   failure to provide medical care to pretrial detainees as is
23 applied to claims by post-conviction prisoners under the Eighth
   Amendment cruel and unusual punishment rubric.

24    The court further notes that, when Plaintiff realized these
   typographical errors, she filed a motion for leave to file a
25 corrected version of the TAC. (ECF No. 48.)  Since the Court and
   Defendants, as stated above, construe these claims as being
26 properly brought under the Fourteenth Amendment, the Court, via
   this order, rules on the substantive validity of Plaintiff's TAC.
27 Since the court grants in part and denies in part Defendants'
   motion with leave to amend, Plaintiff's motion for leave to file
28 a corrected TAC is hereby denied as moot.

(Joinder, filed Sept. 7, 2011, [ECF No. 47].)[2]  For the reasons set forth below, Defendants' motion is granted in part and denied in part.[3]

## BACKGROUND

The case arises out of the passing of Michael Parker, Plaintiff's son, who suffered from certain medical conditions — diverticulitis and congenital heart condition — that required a restricted diet  (Pl.'s Third Am. Compl. ("TAC"), filed Aug. 24, 2001 [ECF No. 40] ¶ 13, 42.)  Decedent passed away at Renown Hospital in Reno, Nevada, after colon and gastronomical complications.  Prior to his death, Decedent intermittently spent time at the Lassen County Adult Detention Facility as a result of allegations of prowling and stalking his ex-girlfriend.  The gravamen of Plaintiff's complaint is that Defendants violated Decedent's constitutional rights by refusing to provide necessary medical care while decedent was detained at the Facility.

---

[2] The court granted Defendants' motion to dismiss the Second Amended Complaint with leave to amend as to Plaintiff's first, second, third, fourth, eighth, ninth, tenth, twelfth and thirteenth claims against officer Vega and the City of Susanville. (Mem. & Order, filed Aug. 1, 2011 [ECF No. 38], at 25:1-5.)  Plaintiff, however, failed to add any additional factual allegations, or argument, against either Officer Vega or City of Susanville.  As such, the aforementioned claims against Officer Vega and the City of Susanville are hereby dismissed with prejudice.  As a result of dismissal of these claims, none of Plaintiff's remaining claims are asserted against Officer Vega, and thus, the entirety of Plaintiff's complaint against Officer Vega is hereby dismissed.

[3] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. R. 230(g).

1    Decedent was first detained at the Facility on July 3, 2009,

2 when he "was arrested and charged with Lewd vagrancy, peep, prowl

3 and stalking"; his mother posted bail at the set bond rate of

4 $3,750.  (Id. ¶ 14.)  On July 17, 2009, Decedent was charged with

5 violating a court order prohibiting Decedent from contacting his

6 ex-girlfriend.  (Id. ¶ 16.)  Five days later, while detained at

7 the center, Decedent requested to see a doctor; instead of seeing

8 a doctor, a physician's assistant attended to Decedent and

9 concluded that he suffered from a stomach flu.  (Id. ¶ 18.)

10 Finally, on August 6, 2009, after complaining of intense pain,

11 the Center's contract physician administered x-rays which

12 revealed an infected colon.  (Id. ¶ 19.)

13    The next day, Plaintiff's mother posted Decedent's bail and

14 Plaintiff was admitted to Renown Hospital in Reno, Nevada, in

15 order to obtain a procedure in which a drain tube was inserted

16 into his colon for purposes of addressing the infection.  (Id.

17 ¶ 20.)  On August 29, 2009, Decedent's family physician,

18 Dr. Meadows — also the contract doctor for the hospital —

19 removed the drain tube at his office.  (Id. ¶ 21.)  According to

20 the TAC, approximately one month after he removed the drain,

21 Dr. Meadows wrote a letter stating that "any incarceration should

22 be converted to a house arrest because of the serious medical

23 condition of Michael Parker."  (Id. ¶ 23.)

24    On September 21, 2009, Decedent accompanied Plaintiff to the

25 bank.  (Id. ¶ 24.)  When she returned, she found her son

26 surrounded by approximately six police cars.  (Id.)  The

27 Susanville police officers informed Plaintiff that Decedent had

28 driven past his ex-girlfriend's home that morning.

(Id. ¶ 25.)  Plaintiff alleges that she told the officers that incarceration would kill her son.  (Id. ¶ 26.)  At that time, "Officer Vega stated that he would arrest Michael Parker . . . and did so despite actual knowledge that the Lassen Detention Facility Doctor specifically stated that Michael Parker should not be incarcerated because of his serious medical condition." (Id. ¶ 29.)  Plaintiff alleges that Decedent was taken to the Facility despite the individual officers' cognizance of the letter allegedly written by Dr. Meadows warning against incarceration.  (Id. ¶ 30.)

Plaintiff alleges that, during the bond hearing, Mineau reported to the court numerous instances of prowling and TRO violations "for the purpose of influencing the court to make the bond so high that [Plaintiff], with her bond capacity as a bond agent, could not write the bond, thus insuring Michael Parker would not be released on bond."  (Id. ¶ 33.)  Plaintiff further alleges that the "Sheriff of Lassen County knew that [Mineau] had exaggerated and told untruthful statements to the judge in order to raise the amount of the bail and knew that [Plaintiff] was a bail agent and that the amount of the bail would have to be raised to an amount higher than usually required for a misdemeanor."  (Id. ¶ 34.)  Decedent's bail was ultimately set at $150,000.  (Id. ¶ 35.)

///

///

///

///

///

1    Plaintiff alleges that she visited her son in the facility

2  on September 30, 2009[4] and requested of an unknown guard that her

3  son be released for medical attention; Plaintiff alleges that the

4  Facility refused her request to release Decedent to home arrest

5  or provide him "necessary life-sustaining medical attention."

6  (Id. ¶¶ 36-37.)  According to Plaintiff, when she visited

7  Decedent one week later, he had visibly lost over forty pounds.

8  (Id. ¶ 38.)  When Plaintiff asked Decedent why he had not seen a

9  doctor, he replied that the Facility staff told him "quit

10 complaining and make the best of it."  (Id. ¶ 39.)

11    On October 22, 2009, Decedent was once again released to

12 Renown Hospital. (Id. ¶ 40.)  Plaintiff alleges that nobody from

13 the detention facility contacted her to inform her that her son

14 was transferred to the hospital until three weeks after his

15 transport, when Mineau informed her that Decedent was released.

16 (Id. ¶ 41.)  Shortly thereafter, Decedent died of gastronomical

17 complications.

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26

27    [4] Plaintiff's complaint states 2010, however, such a date
would be inconsistent with the relevant time line.  The court
28 therefore infers that, based on the time line of actual events,
that actual date was 2009.

6

1
**STANDARD**

2

3      On a motion to dismiss for failure to state a claim under

4 Federal Rule of Civil Procedure 12(b)(6),[5] all allegations of

5 material fact must be accepted as true and construed in the light

6 most favorable to the nonmoving party.  Cahill v. Liberty Mut.

7 Ins. Co., 80 F.3d 336,337-38 (9th Cir. 1996).  Rule 8(a)(2)

8 "requires only 'a short and plain statement of the claim showing

9 that the pleader is entitled to relief,' in order to 'give the

10 defendant fair notice of what the [. . .] claim is and the

11 grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly,

12 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

13 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to

14 dismiss does not require detailed factual allegations.  However,

15 "a plaintiff's obligation to provide the grounds of his

16 entitlement to relief requires more than labels and conclusions,

17 and a formulaic recitation of the elements of a cause of action

18 will not do."  Id. (internal citations and quotations omitted).

19 A court is not required to accept as true a "legal conclusion

20 couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct.

21 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555).

22 ///

23 ///

24 ///

25 ///

26 ///

27 ──────────────

28      [5] All further references to "Rule" or "Rules" are to the
Federal Rules of Civil Procedure unless otherwise noted.

7

"Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2). . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

///
///
///
///
///

1   A court granting a motion to dismiss a complaint must then

2   decide whether to grant leave to amend.  Leave to amend should be

3   "freely given" where there is no "undue delay, bad faith or

4   dilatory motive on the part of the movant, . . . undue prejudice

5   to the opposing party by virtue of allowance of the amendment,

6   [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S.

7   178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d

8   1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

9   be considered when deciding whether to grant leave to amend).

10  Not all of these factors merit equal weight.  Rather, "the

11  consideration of prejudice to the opposing party . . . carries

12  the greatest weight." Eminence Capital, 316 F3d at 1052 (citing

13  DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir.

14  1987).  Dismissal without leave to amend is proper only if it is

15  clear that "the complaint could not be saved by any amendment."

16  Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th

17  Cir. 2007) (internal citations and quotations omitted).

18

19                        **ANALYSIS**

20  **A.   Plaintiff's § 1983 claims**

21

22  Defendants contend that none of Plaintiff's § 1983 claims

23  against Mineau in either his individual, or his supervisory

24  capacity are cognizable because Plaintiff has failed to allege

25  any violations of Decedent's or Plaintiff's federally guaranteed

26  rights.

27  ///

28  ///

Specifically, Defendants contend that Plaintiff has failed to state facts sufficient to show that Mineau was deliberately indifferent to Decedent's serious medical needs such that the court could infer a plausible constitutional violation.  (See MTD at 3:22-6:12.)  Defendants further contend that Plaintiff's Section 1983 claims also fail against the County of Lassen because: (1) Plaintiff has improperly brought her first four § 1983 claims on behalf of Decedent for his pain and suffering and (2) Plaintiff fails to adequately plead the existence of a policy to establish Monell liability.  (See Id. at 9:4-13-21.) Plaintiff counters that the circumstantial evidence, as pled by the TAC, is sufficient for the court to infer that Mineau was deliberately indifferent to Plaintiff's serious medical needs, and the County's failure to train caused Plaintiff's constitutional deprivation such that the motion to dismiss should be denied in accordance with the standard governing dismissal under Rule 12(b)(6).

The court examines Plaintiff's § 1983 claims in three parts: (1) Plaintiff's individual liability claims against Mineau; (2) Plaintiff's supervisory liability claims against Mineau; and (3) Plaintiff's Monell liability claims against Lassen County. The court will then analyze Plaintiff's state law claims.

///

///

///

///

///

///

10

1          **1.   Individual Liability**[6]

2

3      As opposed to prisoner claims under the Eighth Amendment, a

4 <u>pretrial</u> detainee is entitled to be free of cruel and unusual

5 punishment under the due process clause of the Fourteenth

6 Amendment.  <u>Bell v. Wolfish</u>, 441 U.S. 520, 537 n. 16; <u>Simmons v.</u>

7 <u>Navajo Cnty., Ariz.</u>, 609 F.3d 1011, 1017-18 (9th Cir. 2010).  A

8 pretrial detainee's due process right in this regard is violated

9 when a jailer fails to promptly and reasonably procure competent

10 medical aid when the pretrial detainee suffers a serious illness

11 or injury while confined.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-

12 105 (1976).  In order to establish a plausible claim for failure

13 to provide medical treatment, Plaintiff must plead sufficient

14 facts to permit to court to infer that (1) Decedent had a

15 "serious medical need that (2) Mineau was "deliberately

16 indifferent" to that need.  <u>Jett v. Penner</u>, 439 F.3d 1091, 1096

17 (9th Cir. 2006); <u>Cf.</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 837

18 (1994).  A serious medical need exists when "failure to treat a

19 prisoner's condition could result in further significant injury

20 or the unnecessary and wanton infliction of pain.  <u>Jett</u>, 439 F.3d

21 at 1096 (internal citations and quotations omitted).

22 ///

23

-------------------

24      [6] As the court noted in its previous memorandum and order,
   "There is no longer a need to bring official-capacity actions
25 against local government officials, for . . . local government
   units can be sued directly for damages and injunctive relief.
26 (ECF No. 38 at 8:25-28 [<u>quoting</u> <u>Kentucky v. Graham</u>, 473 U.S. 159,
   166 (1985)].)  Thus, as the court held in its previous order
27 dismissing Plaintiff's claims against Sheriff Warren, all of
   Plaintiff's claims against Mineau in his official capacity are
28 hereby dismissed with prejudice.

The Supreme Court, in <u>Farmer</u>, explained in detail the contours of the "deliberate indifference" standard. Specifically, Mineau is not liable under the Fourteenth Amendment for his part in allegedly denying necessary medical care unless he knew "of and disregard[ed] an excessive risk to [Mineua's] health or safety" <u>Id.</u> at 837.  Deliberate indifference contains both an objective and subjective component: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." <u>Id.</u>  Plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted <u>or failed to act</u> despite his knowledge of a substantial risk of serious harm." <u>Id.</u> at 842 (emphasis added).  Important for purposes of this motion, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, <u>including inference from circumstantial evidence</u>, and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." <u>Id.</u> (emphasis added) (internal citations ommitted).  According to the Supreme Court, this standard "sends a clear message to prison officials that their affirmative duty under the Constitution for the safety of inmates is not to be taken lightly.  <u>Id.</u> at 852 (Blackmun, J., concurring).

///

///

///

1    The court finds unavailing Defendants' contentions that the

2    TAC lacks sufficient allegations to support any[7] of Plaintiff's

3    § 1983 claims in his individual capacity.  Specifically, based on

4    all the circumstances as alleged, the court can reasonably infer

5    that Mineau was deliberately indifferent to Decedent's serious

6    medical needs.  The circumstantial facts, as alleged, that are

7    relevant to Mineau are as follows: he had knowledge of Decedent's

8    history based on the fact that he "worked as the undersheriff of

9    Lasssen County during the incidents that are described . . .

10   [and] gave testimony to set the bail for Michael Parker at

11   $150,000 on a misdemeanor offense" (Compl ¶ 6, 33); Mineau knew

12   Plaintiff and has intimate knowledge of decedent's history with

13   the County (See Id. ¶¶ 33, 41.); Decedent's doctor sent a letter

14   explaining that Decedent should be put on house arrest as opposed

15   to detention because of his serious medical condition (Id. ¶ 23);

16   during a previous confinement at the facility, Decedent had to be

17   admitted to the hospital for emergency surgery (Id. ¶ 20); during

18   previous detainments, Decedent put in numerous requests to see

19   the doctor (Id. ¶ 18); when Nancy Schwartz visited her son, she

20   requested that he be released for medical attention (Id. ¶ 36-

21   37); within just two weeks of detention, Decedent had lost over

22   forty pounds (Id. ¶ 38);

23

24        [7] As set forth below, Plaintiff's first through fourth
     claims under § 1983 are dismissed with leave to amend as they are
25   improperly brought on behalf of Decedent for his pain and
     suffering.  In reaching this conclusion, however, the court does
26   not hold that these claims should be dismissed for faiCure to
     allege sufficient facts to state a claim for deliberate
27   indifference; rather, the claims are simply pled improperly on
     behalf of Decedent.  Moreover, this analysis in no way affects
28   Plaintiff's eleventh claim for deprivation of familial
     relationship under § 1983.

when Plaintiff asked her son "why he had not seen a doctor[] he stated to her that the staff had said to him to "quit complaining and make the best of it" (Id. ¶ 39); ultimately, and although he was not able to make bail, Decedent had to be released from the facility and admitted to the hospital because his health was failing so quickly. (Id. ¶ 40); Although Mineau knew of Decedent's relocation, did not contact Plaintiff when her son was transported from the Facility to the hospital (Id. ¶ 41.) Finally, Plaintiff alleges that "Mineau personally knew that [Decedent] was seriously and critically ill, that incarceration posed a substantial risk of serious harm if not treated and refused to implement any policy or protocol at the [Facility] to provide for the prompt response to serious medical needs." (Id. at 53.)

Based on the these facts, which the court must accept as true, the court can reasonably infer that it was certainly plausible that Mineau knew of, and failed to respond to, Decedent's serious medical condition.  This conclusion is supported by the fact that, "[t]he common jails in the several counties of [California] are kept by the sheriffs of the counties in which they are respectively situated." Cal. Penal Code § 4000.  Based on the Sheriff Department's unique position in relation to the facility, and the circumstances as alleged — especially Mineau's intimate knowledge of Decedent's case — the court can reasonably infer that it is plausible that Mineau was deliberately indifferent to Decedent's serious medical needs.

///

///

14

1    As a point of reference, the court notes the factual

2  similarities between this case and Martin v. Board of Cnty.

3  Comm'r of Cnty. Of Pueblo, 909 F.2d 402 (10th Cir. 1990).  In

4  Martin, Plaintiff brought a civil rights suit under § 1983 for

5  disregard of medical needs during pretrial detention.  Prior to

6  plaintiff's transportation to county jail, a physician warned the

7  transporting officers of the significant risk of injury "should

8  she be moved other than by wheelchair or gurney, and that she was

9  to be released only to the care of her parents."  Id. at 404.

10  The physician requested that, at the very least, the transporting

11  officers "contact plaintiff's attending physician before moving

12  her."  Id.  The officers ignored the warning and plaintiff's neck

13  injury was allegedly aggravated during transportation.  Id.  In

14  upholding the district court's denial of defendants' motion for

15  summary judgment on qualified immunity grounds, the court held

16  that the evidence "raised factual questions whether defendants

17  deliberately disregarded the medical information and warnings

18  given by plaintiff's mother regarding her daughter's serious,

19  fragile condition, and refused her request that they contact the

20  attending physician for instructions before moving plaintiff."

21  Id. at 406.  Similarly, here, Plaintiff has alleged sufficient

22  facts to survive defendants' motion for summary judgment based on

23  her allegations that Mineau and other prison officials

24  deliberately disregarded the letter Plaintiff's physician wrote

25  explaining that, because of his serious medical condition, he

26  should not be detained at the facility.

27  ///

28  ///

15

The court further finds Defendants' three main arguments that the facts, as alleged, are insufficient to survive dismissal unconvincing.  Specifically, the court refers to Defendants' contentions that: (1) Mineau's statements during the bond hearing are irrelevant because "[a] law enforcement officer can only be held liable for . . . excessive bail 'if they prevented the [judicial officer] from exercising his independent judgment'" (MTD at 5:1-3 [quoting Muhammad v. San Diego County Sheriff's Dep't., 2008 WL 821832 *2 (S.D. Cal. 2008)]); (2) Plaintiff's allegation that Mineau refused to implement a policy of providing a prompt response to medical needs is belied by a previous statement alleging that there is a policy of requiring inmates to submit written requests for medical care (Id. at 5:6-16); (3) Plaintiff's claim for loss of familial relationship is not cognizable because Plaintiff did not plead that Mineau's conduct "shocked the conscience" (Id. at 5:26-6:12.)

First, while Defendants correctly state the law concerning a law enforcement officer's potential liability for excessive bail, they fail to correctly apply it.  Specifically, the issue is whether Mineau knew of, and failed to address Decedent's medical condition, not whether Mineau is directly liable for the excessive bail.  In this regard, Mineau's testimony is relevant as it tends to show that Mineau had extensive knowledge of Decedent's history and detainment at the facility.

///

///

///

///

Even if the latter question were the relevant one here, if, as Plaintiff alleges, Mineau purposefully distorted his testimony for purposes of obtaining a higher bail, the court could undoubtedly infer that he "prevented the [judicial officer] from exercising his independent judgment." Muhammad, 2008 WL 821832 *2 (quoting Galen v. County of Los Angeles, 477 F.3d 652, 659 (9th Cir. 2007).)

Second, Defendants' contention that Plaintiff admitted there was indeed a medical policy in place is a non-sequitur. Specifically, whether there was a specific policy of requiring written submissions for medical care has no bearing on whether Mineau is potentially liable in his personal capacity for being deliberately indifferent to Decedent's serious medical needs. In other words, Defendants are simply applying the incorrect standard to the issue of Mineau's liability in his individual capacity.

Defendants' third arguments are similarly misplaced. Specifically, Plaintiff need not actually state the words "Defendant's conduct shocked the conscience"; she is merely required to plead facts which could plausibly demonstrate that Defendant was deliberately indifferent to Plaintiff's medical needs. Defendants' reliance on Moreland v. Las Vegas Metro. Police Dep't., 159 F.3d 365, 372 (9th Cir. 1998) is misplaced. Specifically, Moreland involved a substantive due process claim arising out of a police shooting, not a claim for failure to provide medical care.

///

///

17

Indeed, the very authority Defendants rely upon specifically states that "Eighth Amendment claims based on medical care are governed by [a] different culpability standard than claims involving harm inflicted by officers responding to . . . disturbances."  Id. at 372 (citing Whitley v. Albers, 475 U.S. 312, 320-321 (1986)).

In sum, the court concludes that, at this point in the litigation, without substantial discovery, and where the court must draw all inferences in favor of Plaintiff, the TAC contains sufficient factual allegation for the Court to infer that Mineau's deliberate indifference to Decedent's serious medical needs resulted in Decedent's constitutional deprivation.

## 2. Supervisory Liability

Plaintiff contends that Mineau is also liable for Decedent's constitutional deprivation in his supervisory capacity because he "knew of the blatant disregard of [Decedent's] serious medical need and he participated in keeping [Decedent] in jail to deprive him of medial care and knew that he should have been released to obtain medical care." (Pl.'s Opp'n, filed Sept. 22, 2011 [ECF No. 50] at 6:4-9.)  Defendants do not specifically address Plaintiff's argument that Mineau is liable for Decedent's alleged constitutional deprivation in his supervisory capacity.  Instead, Defendants rely on the same argument asserted in support of its contention that Mineau is not liable in his individual capacity — Plaintiff has not alleged sufficient facts to implicate Mineau in the deprivation of Decedent's Fourteenth Amendment rights.

State officials are "persons" within the meaning of § 1983. Hafer v. Melo, 502 U.S. 21, 22 (1991).  As such, prison officials may be sued in their individual capacity for damages resulting from an alleged violation of a prisoner's Constitutional rights under § 1983.  Id.  Individual capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law." Id. at 25.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.  Iqbal, 129 S. Ct. at 1948.  Rather, each government official may only be held liable for his own misconduct.  Bowell v. Cal. Substance Abuse Treatment Facility, No. 1:10-CV-02336-AWI-DLB PC, 2011 WL 2224817, at *4 (E.D. Cal. June 7, 2011).

However, government officials acting as supervisors[8] may be liable under § 1983 under certain circumstances.  A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the Constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the Constitutional violation. Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).  Thus, § 1983 actions against supervisors are proper as long as a sufficient causal connection exists and the plaintiff was deprived under color of law of a federally secured right.  Starr v. Baca, 633 F.3d 1191, 1196 (9th Cir. 2011) (quoting Redman v. Cnty. of San Diego, 942 F.2d 1435, 1447 (9th Cir. 1991)).

///

---

[8] Defendants do not contest that Mineau is a "supervisor" for purposes of supervisory liability under § 1983.

19

1    The requisite causal connection between a supervisor's
2  wrongful conduct and the violation of the prisoner's
3  Constitutional rights can be established in a number of ways.
4  The plaintiff may show that the supervisor set in motion a series
5  of acts by others, or knowingly refused to terminate a series of
6  acts by others, which the supervisor knew or reasonably should
7  have known would cause others to inflict a Constitutional injury.
8  Dubner v. City of S.F., 266 F.3d 959, 968 (9th Cir. 2001).
9  Similarly, a supervisor's own culpable action or inaction in the
10  training, supervision, or control of his subordinates may
11  establish supervisory liability.  Starr, 633 F.3d at 1197.
12  Finally, a supervisor's acquiescence in the alleged
13  constitutional deprivation, or conduct showing deliberate
14  indifference toward the possibility that deficient performance of
15  the task may violate the rights of others, may establish the
16  requisite causal connection.  Id.; Menotti v. City of Seattle,
17  409 F.3d 1113, 1149 (9th Cir. 2005).

18    In this case, based on two of the aforementioned theories,
19  Plaintiff's complaint contains sufficient factual allegations to
20  establish a causal connection between Mineau's allegedly wrongful
21  conduct and the constitutional violation such that it survives
22  Defendants' motion to dismiss.  First, the complaint contains
23  sufficient factual allegations to permit the court to reasonably
24  infer that Mineau plausibly refused to terminate a series of acts
25  by his subordinates, which the supervisor knew or reasonably
26  should have known would cause others to inflict a Constitutional
27  injury.
28  ///

1   Specifically, Plaintiff alleges that Decedent's physical health
2   was visibly deteriorating, that he had requested medical care on
3   numerous occasions, that Mineau knew of his deteriorating health
4   but, as undersheriff of Lassen County, failed to ensure that the
5   Facility provided him sufficient medical care.  Moreover, based
6   on these same facts, the court can reasonably infer that Mineau
7   plausibly acquiesced in the alleged constitutional deprivation
8   and was deliberately indifferent to the possibility that his
9   subordinates deficiently performed in providing Decedent
10  necessary medical care.

11      In sum, at this stage of the litigation, in which little to
12  no discovery[9] has been conducted, and where all reasonable
13  inferences must be drawn in favor of Plaintiff, the Court cannot
14  conclude that, based on the facts as alleged, Plaintiff has no
15  plausible claim that Mineau is liable under Section 1983 for
16  Plaintiff's constitutional deprivation in either his individual
17  or supervisory capacity.

18  ///

19  ///

20  ///

21  ///

22  ///

23

24      [9] The court notes that fully-developed discovery —
    particularly Mineau's deposition — is necessary for the ultimate
25  resolution of Plaintiff's § 1983 claims against Mineau.  For
    example, discovery may reveal that Mineau indeed had intimate
26  knowledge of Decedent's deteriorating health but did nothing to
    insure adequate medical care, which would militate in favor of
    Plaintiff's claims; conversely, discovery may reveal that it
27  would have been impossible for Mineau to know of Decedent's
    health, which would militate in favor of denying Plaintiff's
28  claim.

1        ### 3.   **Monell Liability[10] Against Lassen County**

2

3        Defendants tether their contention that Plaintiff has failed

4   to allege sufficient facts to permit the Court to infer that the

5   County plausibly is liable under § 1983 on a theory of <u>Monell</u>

6   liablility to the fact that Plaintiff only alleges a single

7   incident in which a pretrial detainee at the Facility has been

8   denied adequate medical care.  (<u>See</u> MTD at 10-11; <u>see also</u> Def.'s

9   Reply, filed Sept. 29, 2011 [Ecf No. 52], at 6-7.)  Specifically,

10  defendants argue that, since "sporadic or isolated incidents are

11  not a sufficient basis to state a Section 1983 claim," and

12  Plaintiff fails to point to any instances — besides the single

13  incident of Decedent's passing — "that would support an

14  inference that a custom of deliberate indifference to serious

15  medical conditions existed in the County," Plaintiff's claims

16  against the County must be dismissed.

17  ///

18  ///

19  ///

20  ///

21  _____

22          [10] The Court previously denied Defendants' motion to dismiss
    Plaintiff's claims based on failure to provide medical care "to
23  the extent these causes of action seek to recover for injuries
    Parker sustained while incarcerated as a pre-trial detainee."
24  (ECF No. 38 at 13:21-23.)  However, those claims only survived
    because "the County d[id] not challenge the factual underpinnings
25  of the claims themselves and instead attack[ed] only Plaintiff's
    misidentification of the proper constitutional amendment."  (Id.
26  at 13:26-28.)  Defendants now contend that Plaintiff has not
    alleged sufficient facts to establish liability against the
27  County under the Fourteenth Amendment.  Thus, the Court now, for
    the first time, addresses the substantive merits of Plaintiff's
28  factual allegations in this regard.

Plaintiff responds that, based on the particularly egregious nature of the facts as alleged, Plaintiff has alleged a custom of failure to train, supervise or discipline employees who fail to provide medical care to an incarcerated pretrial detainee sufficient to withstand a motion to dismiss.

Defendants also maintain that, because claims one through four, "pursuant to Section 1983, ple[d] o[n] behalf of the Estate[,] seek damages for pain and suffering, those [claims] should be dismissed."  (MTD at 10:1-2.)  In support of this proposition, Defendants cite to a number of holdings from the Eastern District of California Defendants maintain proscribe survivors from recovering damages for a Decedent's pain and suffering.  Plaintiff does not directly address Defendants' contention; instead, Plaintiff merely declares that she "believes that the reasoning and legal analysis" of Defendants and the cases Defendants rely on "do[] not preclude the kind of wrongful death suffered."  (Pl.'s Opp'n at 10:11-16.)

The court finds unavailing Defendants' contention that the allegations supporting Plaintiff's § 1983 claims do not state sufficient facts to allow the Court to infer that Lassen County plausibly had an official policy or custom that caused the alleged constitutional deprivation.  Municipalities or local governments cannot be vicariously liable for employee conduct under § 1983, but rather are only "responsible for their own illegal acts."  Connick v. Thompson 131 S. Ct. 1350, 1359 (2011) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986).)

///

///

23

In other words, a municipality may only be liable where it individually causes a constitutional violation via "execution of a government's policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent them." Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978); Ulrich v. City & County of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 131 S. Ct. at 1359.

Complete inadequacy of training may amount to a policy giving rise to Monell liability; however, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." City of Canon v. Harris, 489 U.S. 378, 379 (1989). It therefore follows that, a claim of inadequate training is only cognizable under Section 1983 "where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." Id. at 392. In sum, "Plaintiff can allege that through its omissions the municipality is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional [and] the municipality did not direct the employees to take the unconstitutional action," as long as the court may infer that those omissions amounted to a deliberate indifference to Plaintiffs' constitutional rights. Gibson, 290 F.3d at 1193-94.

24

1    Defendants' argument is on point in one regard: generally
2 speaking, in order to prove deliberate indifference, it is
3 "ordinarily necessary" to demonstrate "a pattern of similar
4 constitutional violations by untrained employees." Connick,
5 131 S. Ct. at 1360 (citing Bryan Cnty Com'rs of Bryan Cnty
6 Okl. v. Brown, 520 U.S. 397, 409 (1997)). However, the Supreme
7 Court, in Connick, recently affirmed the validity of the
8 so-called "single-incident" theory. Specifically, in Connick,
9 the court affirmed that, under City of Canton, Ohio v. Harris,
10 489 U.S. 378 (1989), a particular "showing of 'obviousness' can
11 substitute for the pattern of violations ordinarily necessary to
12 establish municipal liability." Connick, 131 S. Ct. at 1361.
13 However, Connick took care to note that it is only "'in a narrow
14 range of circumstance' [that] a pattern of similar violations
15 might not be necessary to show deliberate indifference." Id.
16 (quoting Bryan Cnty, 520 U.S. at 409.) A violation of a
17 protected right must be a "highly predictable consequence" of a
18 failure to train. Id. Connick explained that the "single-
19 incident" theory represents the Supreme Court's refusal to
20 "foreclose upon the possibility" that the failure to train is so
21 patently obvious that a single constitutional violation suffices
22 to give rise to municipal liability under § 1983. Id.

23    In this case, the Court finds that, based on the allegations
24 in the complaint, it is plausible that the failure to train was
25 so obviously deficient that it could lead to liability resulting
26 from the single constitutional deprivation at issue here.
27 ///
28 ///

1  In other words, the court can reasonably infer that, based on the

2  particular circumstances as alleged, the facility's employees so

3  obviously lacked training in providing proper medical care that

4  it resulted in Decedent's death and, consequently, Plaintiff's

5  loss of her son's companionship.  Specifically, as alleged,

6  Decedent visibly lost forty pounds; directly requested, and was

7  refused, medical care; and previously had medical complications

8  while detained at the Facility.  These allegations are compounded

9  by Plaintiff's assertion that Decedent's physician sent a letter

10 explaining that, because of Decedent's severe medical condition,

11 he should not be detained at the Facility, but rather should be

12 placed in the care of his mother.  Thus, at this stage of the

13 litigation, absent more fully-developed facts, the Court declines

14 to dismiss Plaintiff's § 1983 claims on the basis that Plaintiff

15 has only alleged a single incident of failure to provide medical

16 care.[11]

17     While the court finds that Plaintiff's <u>first four</u> claims

18 state a plausible claim to withstand 12(b)(6) dismissal with

19 regard to <u>Monell</u> liability, those claims fail on other grounds.

20 Specifically, "[t]he Eastern District has consistently held that

21 § 377.34 [of the California Code of Civil Procedure] is not

22 inconsistent with Section 1983, and has thus barred survivor

23 claims for pain and suffering damages under Section 1983."

24 ///

25

26     [11] Defendants are free to re-assert their "single-incident"
   theory at the summary judgment stage as further discovery will
   shed light on the specific circumstances that led to Decedent's
27 death.  However, at this stage of the litigation, and based on
   the nature of the allegations, that argument does not convince
28 the Court that outright dismissal is appropriate.

26

1   <u>Estate of Contreras ex rel. Contreras v. Cnty of Glenn</u>,

2   725 F. Supp. 2d 1161 (E.D. Cal. 2010).  This trend began with

3   <u>Venerable v. City of Sacramento</u>, 185 F. Supp. 2d 1128, 1133

4   (E.D. Cal. 2002), which held that, "[b]ecause state law does not

5   permit recovery of a decedent's pain and suffering, [Plaintiff's]

6   claim for pain and suffering from injury leading to death does

7   not survive and will be dismissed."  <u>Id.</u>  However, "[i]t is

8   [also] well established in the Ninth Circuit that a 'parent has a

9   constitutionally protected liberty interest in the companionship

10  and society of his or her child" that is violated when a

11  defendant is deliberately indifferent to that right.  <u>Id.</u> at 1131

12  (quoting <u>Ward v. City of San Jose</u>, 967 F.2d 280, 283 (9th Cir.

13  1998).

14       In this case, each of Plaintiff's first four claims rely on

15  Plaintiff's allegations that the County's "complete failure to

16  train was the actual and proximate cause of [Decedent's]

17  unnecessary and <u>wanton infliction of pain and physical injury</u>."

18  (<u>See</u> TAC ¶ 73; <u>see</u> <u>also</u> <u>Id.</u> ¶¶ 80, 89, 95 [describing Decedent's

19  pain and anguish]) (emphasis added).  While Plaintiff may recover

20  where the failure to train resulted in Decedent's death, and

21  thus, the deprivation of Plaintiff's liberty interest in the

22  companionship of her child, she is precluded from recovering for

23  her deceased child's pain and suffering.

24  ///

25  ///

26  ///

27  ///

28  ///

27

As such, Plaintiff's first, second, third and fourth claims, the essence of which consist of Decedent's pain and suffering, are hereby dismissed <u>with leave to amend.</u>[12]

### B.    Plaintiff's State Law Claims

#### 1.    Plaintiff's Tenth Claim — California Civil Code § 52.1

In its memorandum and order on Plaintiff's motion to dismiss Plaintiff's Second Amended Complaint, the court dismissed Plaintiff Tenth Cause of Action for violation of California Civil Code § 52.1 because "the setting of a bond, without more, cannot be viewed as intimidation or coercion, nor does a passing comment, though insensitive, that [Decedent] should learn to 'make the best of it' rise to the level of a threat." (ECF No. 38 at 20:1-6.)  Plaintiff amended her complaint to state that <u>she</u> "was threatened with the further imprisonment of her son, the further denial of medical treatment if she continued to request visitation with him or further phone calls with him." (TAC ¶ 127.)  Defendants now maintain that Plaintiff has not sufficiently amended her complaint to demonstrate sufficient threat or coercions by Defendants to withstand dismissal of the claim.

///

///

///

_____

[12] Plaintiff's eleventh claim under § 1983, is brought not to recover for Decedent's pain and suffering, but rather on her own behalf for loss of familial relationship.  Thus, Plaintiff's eleventh claim for relief survives.

Plaintiff <u>again</u> takes the position her allegations are sufficient here because Parker's bond was set purposefully high, which intimidated Parker by forcing his incarceration, and that Parker was threatened when jail staff responded to his medical complaints by telling him to quit complaining and make the best of it.

As the Court previously held, Plaintiff's repeated allegations are simply insufficient to give rise to a claim under Section 52.1. Moreover, liability pursuant to Section 52.1 is "limited to plaintiffs who themselves have been the subject of violence and threats." <u>Bay Area Rapid Transit v. Sup. Ct.</u>, 38 Cal. App. 4th 141, 145 (1995). The complaint in this case, however, states that the alleged "threats" and "violence" were directed at Decedent. Based on the foregoing, Defendants' motion to dismiss Plaintiff's Tenth claim for relief is granted without leave to amend.

### 2. Plaintiff's eighth, ninth, twelfth and thirteenth claims — Negligent Infliction of Emotional Distress & Intentional Infliction of Emotional Distress

Defendants contend that Plaintiff's eighth and ninth claims for negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED"), brought <u>on behalf of Decedent</u>, should be dismissed because claims for NIED and IIED can only be brought in Plaintiff's individual capacity.

///

///

///

29

Defendants further maintain that Plaintiff's twelfth and thirteenth claims against the County should be dismissed because public entities cannot be liable under these common law theories of recovery.  Finally, Defendants assert that Plaintiff's twelfth and thirteenth claims against Mineau should be dismissed for failure to state sufficient facts to give rise to either an NIED or IIED claim.

Plaintiff does not specifically address Defendants' various arguments with regard to her NIED and IIED claims.  Instead, Plaintiff submits a blanket argument that the "emotional scarring suffered by the Plaintiff is adequately pled."  (Opp'n at 9:5.) Specifically, Plaintiff avers that Mineau's refusal to provide Decedent medical care and failure to inform Plaintiff that Decedent was transferred to the hospital "shocks the conscience." (Id. at 10:1-9.)

First, Defendants seek to dismiss Plaintiff's eighth and ninth claims which Plaintiff brings to redress the psychological and physical harm Decedent suffered as result of Defendants alleged failure to provide adequate medical care.  (See TAC ¶¶ 119, 121.)  Under California law, an estate's tort claims for emotional distress do not survive the death of Decedent. Specifically, under California law:

> [i]n an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that decedent would have been entitled to recover had the decedent lived, and *do not include damages for pain, suffering, or disfigurement.*

///

Cal. Civ. Proc. Code § 377.34 (emphasis added).  The Ninth
Circuit recently affirmed this rule, upholding with the District
Court's conclusion that, "under California law, the Estate's tort
claims for emotional distress did not survive the death" of
Decedent.  <u>Martin v. California Dept. of Veteran Affairs</u>,
560 F.3d 1042, 1050-51 (9th Cir. 2009).  Because Plaintiff's
eighth and ninth claims are brought solely on behalf of Decedent,
those claims are dismissed without leave to amend.

     Second, the Court finds that the public entity Defendants'
contention that Plaintiff's twelfth and thirteenth California
common law causes of action must be dismissed is well-taken.
In California, "[e]xcept as otherwise provided by statute . . .
[a] public entity is not liable for any injury, whether such
injury arises out of an act or omission of the public entity or
a public employee or any other person."  Cal. Gov. Code
§ 815(a).  The Legislative Committee Comment to Section 815
states, "This section abolishes all common law or judicially
declared forms of liability for public entities, except for
such liability as may be required by the state or federal
constitution, <u>e.g.</u>, inverse condemnation.  In the absence of a
constitutional requirement, public entities may be held liable
only if a statute...is found declaring them to be liable."
Accordingly, "the exclusive basis of public entity tort
liability is statutory."  <u>Tolan v. State of California ex rel.
Dept. of Transportation</u>, 100 Cal. App. 3d 980, 986 (1979).
Plaintiff raises no argument in opposition to the entity
Defendants' Motions to Dismiss her NIED and IIED claims, which
are therefore dismissed without leave to amend.

31

1    The Court, however, finds unavailing Defendants'

2    contention that Plaintiff's twelfth claim for NIED against

3    Mineau should be dismissed for failure to allege that Mineau

4    owed Plaintiff a duty.  NIED claims are merely a species of

5    negligence, and thus, a Plaintiff asserting an NIED claim must

6    show that the defendant owed the plaintiff a duty of care.

7    Lawson v. Mgmt. Activities, 69 Cal. App. 4th 652, 656 (1999).

8    Plaintiff specifically alleges that, under California law, the

9    county Sheriff has a broad and affirmative duty to "keep the

10   county jail and the prisoners in it, and is answerable for the

11   prisoner's safekeeping."  (Pl.'s Opp'n at 6:10-16 [citing Cal.

12   Gov't Code §§ 26605, 26610; Brandt v. Bd. of Supervisors,

13   84 Cal. App. 3d 598, 601; Cal. Penal Code §§ 4000, 4006].)

14   Contrary to Defendants' contention, Plaintiff has specifically

15   alleged that the Sheriff, and by implication, undersheriff

16   Mineau, owed Decedent as a detainee at the Lassen County jail a

17   duty.  If Mineau wishes to contest this duty, he is free to do

18   so at the summary judgment stage; at this stage, however,

19   Plaintiff has alleged sufficient facts to withstand a motion to

20   dismiss.

21   Conversely, the Court finds persuasive Defendants'

22   contention that Plaintiff has failed to allege a prima facie

23   case for IIED, Plaintiff's thirteenth claim against Mineau.

24   "The elements of a prima facie case for the tort of intentional

25   infliction of emotional distress are:

26   ///

27   ///

28   ///

32

1  (1) extreme and outrageous conduct by the defendant with the
2  intention of causing, or reckless disregard of the probability
3  of causing, emotional distress; (2) the plaintiff's suffering
4  severe or extreme emotional distress; and (3) actual and
5  proximate causation of the emotional distress by the
6  defendant's outrageous conduct." <u>Cervantez v. J.C. Penney Co.</u>,
7  24 Cal. 3d 579, 593 (1979) (overturned on other grounds).
8  Under California law, "the rule which seems to have emerged is
9  that there is liability for conduct exceeding all bounds
10 usually tolerated by a decent society, of a nature which is
11 <u>especially calculated to cause</u> and does cause, mental distress
12 of a very serious kind." <u>Ochoa v. Superior Court</u>, 39 Cal. 3d
13 159, 166 n.5 (1985) (emphasis in original).

14      Plaintiff paints with too broad a conclusory brush in
15 support of her intentional infliction of emotional distress
16 claim against Mineau.  Specifically, Plaintiff's statement in
17 opposition to the motion that the "standard is met when
18 Undersheriff John Mineau refused medical care for Michael
19 Parker and then failed and refused to allow his mother to
20 visit" simply does not suffice to demonstrate that Mineau's
21 conduct was especially calculated to cause <u>Plaintiff</u> severe
22 emotional distress.  (Pl.'s Opp'n at 10:7-9.)  Indeed, in
23 <u>Ochoa</u>, the California Supreme Court sustained a demurrer to
24 plaintiff's IIED claims in an abundantly similar factual
25 setting.  Specifically, in <u>Ochoa</u>, plaintiff's son died after
26 she observed his health visibly deteriorate while the staff at
27 the juvenile facility he was detained at refused to provide him
28 appropriate medical care.  <u>Id.</u> at 162-165.

1  As did the Ochoa court, the Court finds that Plaintiff simply

2  has not alleged sufficient facts to state a plausible IIED

3  claim against Mineau.   As such, Plaintiff's thirteenth claim

4  against Mineau is dismissed without leave to amend.

5

6       **C.   Plaintiff's Claims for Punitive Damages**

7

8       The Court previously dismissed Plaintiff's claims for

9  punitive damages with leave to amend.   (See ECF No. 38.)

10 Defendants again contend that Plaintiff's punitive damages

11 claim against the entity defendant is legally prohibited and

12 that Plaintiff has failed to allege that Mineau's conduct was

13 so outrageous as to justify punitive damages.   Plaintiff's

14 opposition fails to address Defendants' assertion that her

15 Punitive damages claims should be dismissed.

16      First, as the Court previously held, Defendants' arguments

17 are well-taken as to the entity Defendants because they are

18 immune from punitive damages liability as a matter of law.

19 Cal. Govt. Code § 818 ("Notwithstanding any other provision of

20 law, a public entity is not liable for damages awarded under

21 § 3294 of the Civil Code of other damages imposed primarily for

22 the sake of example and by way of punishing the defendant.");

23 Newport v. Fact Concerts Inc., 453 U.S. 427, 271 (1981) ("[A]

24 municipality is immune from punitive damages under 42 U.S.C.

25 § 1983.")

26 ///

27 ///

28 ///

Moreover, while individual Defendants, such as Mineau, may be liable for punitive damages under Section 1983 when "their conduct is shown to be motivated by evil motive or intent," Plaintiff wholly fails to address Defendants' motion to dismiss her claim for punitive damages. Smith v. Wade, 461 U.S. 30, 56 (1983). As such, Plaintiff's claim for punitive damages are hereby dismissed without leave to amend. Moreover, even if Plaintiff had addressed Defendants' arguments, the Court also finds that, as set forth above, Plaintiff's allegation simply does not show that Mineau acted with "evil motive or intent." Id. As such, Defendants' motion to dismiss Plaintiff's claim for punitive damages is dismissed without leave to amend.

**CONCLUSION**

For the reasons stated above, Defendants' Motions are granted in part and denied in part, consistent with the foregoing, as follows:

1. Defendants' motion to dismiss Plaintiff's first, second, third and fourth claims under § 1983 for decedent's pain and suffering is GRANTED with leave to amend as to the County and Mineau.

2. Defendants' motion to dismiss Plaintiff's eighth and ninth claims for NIED and IIED in her representative capacity is GRANTED without leave to amend.

3. Defendants' motion to dismiss Plaintiff's twelfth and thirteenth claims for NIED and IIED against the County is GRANTED without leave to amend.

1     4.   Defendants' motion to dismiss Plaintiff's twelfth

2 claim for NIED against Mineau is DENIED.

3     5.   Defendants' motion to dismiss Plaintiff's thirteenth

4 claim for IIED against Mineau is GRANTED without leave to

5 amend.

6     6.   Defendants' motion to dismiss Plaintiff's eleventh

7 claim under Section 1983 for deprivation of familial

8 relationship is DENIED.

9     7.   Plaintiff's entire complaint against Officer Vega is

10 dismissed without leave to amend.

11     8.   Defendant City of Susanville's motion to dismiss is

12 Plaintiff's first, second, third, fourth, eighth, ninth, tenth,

13 twelfth and thirteenth claims is  GRANTED without leave to

14 amend; Defendant City of Susanville's motion to dismiss

15 Plaintiff's Eleventh claim is DENIED.

16     9.   Plaintiff's claim for punitive damages is dismissed

17 against all Defendants without leave to amend.

18     IT IS SO ORDERED.

19

 Dated: January 18, 2012

20

21

22     MORRISON C. ENGLAND, JR.
    UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28