1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA

10

11 | NANCY SCHWARZ, on behalf of            No. 2:10-CV-03048-MCE-CMK
   | herself individually, as the mother of
12 | MICHAEL PARKER, deceased; and
   | NANCY SCHWARZ, as the
13 | representative and administrator of
   | MICHAEL PARKER'S ESTATE,
14 |                                          **MEMORANDUM AND ORDER**
   |              Plaintiffs,
15 |
   |       v.
16 |
   | LASSEN COUNTY ex rel. the LASSEN
17 | COUNTY JAIL (DETENTION
   | FACILITY), et al.,
18 |
   |              Defendants.
19

20

21        Plaintiff Nancy Schwarz ("Plaintiff"), the mother of decedent Michael Parker

22 ("Parker"), on behalf of herself and as successor-in-interest to Parker, seeks redress

23 against Defendants Lassen County and the City of Susanville ("Susanville" or "the City"),

24 among others, for injuries allegedly suffered by Plaintiff and Parker related to Parker's

25 detainment at the Lassen County Adult Detention Facility and Parker's death at Renown

26 Hospital in Reno, Nevada.

27 ///

28 ///

1

1  Plaintiff's sole claim for relief against Susanville, brought pursuant to 42 U.S.C. § 1983,

2  alleges the City deprived Plaintiff of her right to "familial association, society, and

3  companionship" in violation of the First and Fourteenth Amendments.  (Pls.' 4th Am.

4  Compl. 21, Jan 27, 2012, ECF No. 57.)

5       Presently before the Court is Susanville's Motion for Summary Judgment

6  pursuant to Federal Rule of Civil Procedure 56.[1]  (Def.'s Mot. Summ. J., Mar. 19, 2013,

7  ECF No. 97.)  Plaintiff filed a timely Opposition on May 1, 2013.  (Pl.'s Opp'n, May 1,

8  2013, ECF No. 121.)  Susanville filed a timely Reply.  (Def.'s Reply, May 10, 2013, ECF

9  No. 125.)  On June 19, 2013, the Court set the hearing for oral argument, to be held on

10  June 27, 2013.  (ECF No. 130.)  Because the parties requested a new hearing date, the

11  Court rescheduled oral argument for August 22, 2013.  (ECF No. 135.)  Then, on

12  July 25, 2013, the Court ordered Susanville and Plaintiff to submit supplemental briefing

13  addressing certain discrete issues.[2]  (ECF No. 137.)  The City submitted its

14  Supplemental Brief on August 8, 2013 (ECF No. 138), and Plaintiff submitted her

15  Supplemental Brief on August 14, 2013 (ECF No. 139).  On August 20, 2013, the Court

16  ordered another short supplemental response (ECF No. 140), to which each party

17  responded that same day (ECF Nos. 141, 142, 143.)  The Court then ordered the matter

18  submitted without oral argument and vacated the August 22, 2013, hearing.[3]  (ECF

19  No. 144.)

20       For the reasons set forth below, Susanville's Motion for Summary Judgment is

21  GRANTED.

22

23       [1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

24       [2] Specifically, the parties were instructed to address the following issues: 1) The specific conduct
25  in this case, by Defendant City of Susanville, that "shocks the conscience" in violation of the Fourteenth
   Amendment; 2) The specific conduct in this case, by Defendant City of Susanville, that violates the First
26  Amendment; 3) Defendant City of Susanville's official policy or custom that was the moving force of the
   Fourteenth and First Amendment violations.  (ECF No. 137.)

27       [3] Because oral argument will not be of material assistance, the Court orders this matter submitted
   on the briefs.  E.D. Cal. Local R. 230(g).
28

2

**BACKGROUND**[4]

Around 11:00 a.m. on September 22, 2009, Officer Ed Vega of the Susanville Police Department received a complaint from Meredith Sides, alleging Parker had violated a Domestic Violence Restraining Order ("Restraining Order") issued in her favor by Lassen County Superior Court on July 8, 2009.  Sides informed Officer Vega she and Parker had previously dated.  Sides also informed Officer Vega that the Restraining Order had recently been extended.[5]  The terms of the Restraining Order required Parker neither contact Sides, nor come within 100 yards of Sides, her vehicle, or her residence.

More specifically, Sides and Albert Vegas reported to Officer Vega that several minutes earlier, they were standing in front of Sides' residence on Harris Drive when they observed Parker drive by at a slow pace.[6]  Sides identified Parker, describing him as a bald man with sun glasses, and identified the vehicle Parker was driving as a white Explorer.  Officer Vega determined Parker's drive by Sides' house violated the Retraining Order's condition that Parker stay at least 100 yards away from Sides.

///

///

---

[4] Unless otherwise stated, the following facts are derived from Susanville's Statement of Undisputed Facts.  (ECF No. 97-2.)  Plaintiff did not submit her own version of the facts, but takes issue with many of the undisputed facts listed by Susanville.  (See ECF No. 121.)  However, much of the evidence Plaintiff cites, and the "disputes" Plaintiff raises, do not put Susanville's facts into genuine dispute.  Because only those disputes creating a genuine issue of material fact are relevant to a motion for summary judgment, the Court notes only where Plaintiff's response to Susanville's Statement of Facts creates such an issue.

[5] Plaintiff contends that the Restraining Order attached to Officer Vega's police report expired "on its face" on July 29, 2009.  (ECF No. 121 at 2.)  Susanville responds that in Officer Vega's deposition, he stated he could not recall if Sides showed him the Restraining Order and he copied it, or whether he obtained it from some other source.  He also did not remember when he obtained the copy that was attached to his report.  (ECF No. 125-3 at 2.)

[6] Plaintiff objects that the statements of Sides and Vegas are hearsay.  (ECF No. 121 at 2.)  However, these statements are not hearsay, as they are not offered for the truth of the matter asserted.  See Fed. R. Evid. 801(c).  That is, Susanville does not offer these statements to prove that Parker actually did drive by Sides' home in a white Explorer.  Rather, these statements are offered to show that Officer Vega received a report from Sides that she believed a person of a certain description, in a car of a certain description, had violated the restraining order she held.  Whether Parker actually drove by in such a vehicle is irrelevant to the Court's determination of the issue; what is relevant is that Officer Vega received such a report, and then found that Parker matched the description in the report.

1    Approximately fifteen minutes after Officer Vega received the complaint from

2    Sides, he received a radio transmission from Susanville Police Detective Richard

3    Warner, stating Detective Warner had observed Parker driving on Grove Street in the

4    same vehicle which Sides described in her report to Officer Vega.  Detective Warner

5    informed Officer Vega that Parker's mother, Plaintiff Nancy Schwarz, was now driving

6    the vehicle, and the vehicle was parked at the Lassen Federal Credit Union.

7    Officer Vega then drove to the Lassen Federal Credit Union and spoke with

8    Parker, who was sitting in the passenger seat of the vehicle which Sides, Vegas, and

9    Detective Warner had described.  Parker's mother, Plaintiff Nancy Schwarz, was also

10   present in the parking lot, along with Detective Warner and Susanville Police Officer

11   Tobedi.  Upon making contact with Parker, Officer Vega determined Parker matched

12   Sides' physical description of the man who had driven past her home.

13   At this point, Officer Vega advised Parker he was conducting an investigation

14   regarding the violation of a restraining order, and Parker was mentioned as a possible

15   suspect.  Parker acknowledged the existence of a restraining order against him, and

16   stated he was going to court that afternoon for a hearing on the order.  However, Parker

17   denied knowing where Sides lived, denied knowing the location of Harris Drive, and

18   claimed he only drove the vehicle to the Post Office and USA gas station.  Parker

19   insisted he did not drive the vehicle in the vicinity of Harris Drive.[7]

20   Officer Vega then arrested Parker, based on probable cause,[8] for knowing

21   violation of a court order to prevent harassment pursuant to California Penal Code

22   section 273.6(a), and stalking in violation of a restraining order pursuant to California

23   Penal Code section 646.9(b).

---

24   [7] Plaintiff disputes that Officer Vega conducted an investigation, "or had an Order to arrest under

25   § 273.6."  (ECF No. 121 at 5.)  According to Plaintiff, because Officer Vega did not go to the Post Office or the USA gas station to investigate whether Parker was at those locations at the time he stated he was,

26   Officer Vega did not conduct an investigation.

27   [8] Plaintiff contends that Officer Vega did not have probable cause to arrest Parker because Officer Vega did not review the Restraining Order prior to the arrest and, according to Plaintiff, see supra, did not

28   conduct an investigation of the reported acts to determine probable cause.  (ECF No. 121 at 8.)

4

1   Officer Vega made the arrest under the authority of California Penal Code section

2   836(c)(1), which provides that a peace officer shall arrest the restrained person when the

3   officer has probable cause to believe the person has notice of the restraining order and

4   has disobeyed the order.  According to Plaintiff, when Officer Vega arrested Parker,

5   Nancy Schwarz informed Officer Vega that Parker had a serious medical condition, and

6   informed the officers that placing Parker in custody would kill him.[9]

7        After arresting Parker, Officer Vega transported him to the Lassen County Adult

8   Detention Facility, and the staff there assumed custody of Parker.  Officer Vega had no

9   involvement in setting or increasing Parker's bail.[10]  Parker remained incarcerated in the

10  Lassen County Adult Detention Facility until October 9, 2009.[11]  On October 9, 2009,

11  Parker was transferred to Renown Hospital in Reno, Nevada.  Parker remained in

12  Renown Hospital until his death on November 5, 2009.

13

14                              **STANDARD**

15

16        The Federal Rules of Civil Procedure provide for summary judgment when "the

17  movant shows that there is no genuine dispute as to any material fact and the movant is

18  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

19  Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to

20  dispose of factually unsupported claims or defenses.  Celotex Corp., 477 U.S. at 325.

21

22        [9] Plaintiff states that "even though [Officer Vega] didn't recall those statements, [Schwarz] recalled them specifically."  (ECF No. 121 at 6.)

23
24        [10] To dispute this fact, Plaintiff contends that on July 30, 2009, a hearing was held in the Superior Court of Lassen County wherein the Public Defender pointed out that the police officer had contacted the judge about setting the bond without a hearing and without an affidavit.  Plaintiff also contends that the
25  Susanville Chief of Police, Atkinson, knew that this practice had occurred in Susanville, but Plaintiff fails to submit the deposition in which Atkinson purportedly made this statement.  (See ECF No. 121 (listing "Deposition of Atkinson" as Exhibit 5, but failing to include this exhibit).)
26

27        [11] Susanville stated that this date was October 22, 2009.  (ECF No. 97-2.)  However, Plaintiff's response to Susanville's statement of undisputed facts states that the correct date is October 9, 2009. (ECF No. 121.)  Susanville's Reply to Plaintiff's Statement of Undisputed Facts states "no response" to this
28  disputed fact.  (ECF No. 125 at 12.)  Accordingly, the Court accepts October 22, 2009, as the correct date.

1    Rule 56 also allows a court to grant summary judgment on part of a claim or

2  defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may

3  move for summary judgment, identifying each claim or defense—or the part of each

4  claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v.

5  Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).  The standard that applies to a

6  motion for partial summary judgment is the same as that which applies to a motion for

7  summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic

8  Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary

9  judgment standard to motion for summary adjudication).

10    In a summary judgment motion, the moving party always bears the initial

11  responsibility of informing the court of the basis for the motion and identifying the

12  portions in the record "which it believes demonstrate the absence of a genuine issue of

13  material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial

14  responsibility, the burden then shifts to the opposing party to establish that a genuine

15  issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith

16  Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

17  253, 288-89 (1968).

18    In attempting to establish the existence or non-existence of a genuine factual

19  dispute, the party must support its assertion by "citing to particular parts of materials in

20  the record, including depositions, documents, electronically stored information, affidavits

21  or declarations . . . or other materials; or showing that the materials cited do not establish

22  the absence or presence of a genuine dispute, or that an adverse party cannot produce

23  admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The opposing party

24  must demonstrate that the fact in contention is material, i.e., a fact that might affect the

25  outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S.

26  242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper

27  Workers, 971 F.2d 347, 355 (9th Cir. 1987).

28  ///

1    The opposing party must also demonstrate that the dispute about a material fact "is

2    'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for

3    the nonmoving party."  Anderson, 477 U.S. at 248.  Stated another way:

4
> before the evidence is left to the jury, there is a preliminary
> question for the judge, not whether there is literally no

5
> evidence, but whether there is any upon which a jury could
> properly proceed to find a verdict for the party producing it,

6
> upon whom the onus of proof is imposed.

7    Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448

8    (1871)) (emphasis in original).  As the Supreme Court explained, "[w]hen the moving

9    party has carried its burden under Rule [56(a)], its opponent must do more than simply

10    show that there is some metaphysical doubt as to the material facts . . . .  Where the

11    record taken as a whole could not lead a rational trier of fact to find for the nonmoving

12    party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586-87.

13        In resolving a summary judgment motion, the evidence of the opposing party is to

14    be believed, and all reasonable inferences that may be drawn from the facts placed

15    before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

16    255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

17    obligation to produce a factual predicate from which the inference may be drawn.

18    Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

19    810 F.2d 898 (9th Cir. 1987).

20

21                       **ANALYSIS**

22

23        Plaintiff's claim against Susanville arises under 42 U.S.C. § 1983, which provides

24    in relevant part:  "Every person who, under color of any statute, ordinance, regulation,

25    custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of

26    the United States . . . to the deprivation of any rights, privileges, or immunities secured

27    by the Constitution and laws, shall be liable to the party injured . . . ."

28    ///

1  Plaintiff claims Susanville's practices and policies, or lack thereof, violated Plaintiff's
2  constitutional rights.

3      Plaintiff's claim against the City is based on Monell v. Department of Social
4  Services, which held "municipalities were 'persons" under § 1983 and thus could be held
5  liable for causing a constitutional deprivation."  Fairley v. Luman, 281 F.3d 913, 916 (9th
6  Cir. 2002) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978)).  "[W]hile a
7  municipality may not be held liable under § 1983 for the torts of its employees on a
8  theory of respondeat superior, liability may attach where the municipality itself causes
9  the constitutional violation through the execution of an official policy, practice, or
10  custom."  Id. (citing Monell, 436 U.S. at 690-91).  Thus, a plaintiff may state a civil rights
11  claim against a municipality under § 1983 by showing she has suffered a deprivation of a
12  constitutionally protected interest, and such deprivation was caused by an official policy,
13  custom, or usage of the municipality.  436 U.S. at 690-91; Cornejo v. County of San
14  Diego, 504 F.3d 853, 855 n.4 (9th Cir. 2007).  Monell therefore requires Plaintiff prove:
15  (1) she "was deprived of a constitutional right;" (2) the municipality "had a policy;" (3) "the
16  policy amounted to deliberate indifference to her constitutional rights; and (4) the policy
17  was the moving force behind the constitutional violation."  Mabe v. San Bernardino
18  County, Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1110-11 (9th Cir. 2001).

19      Susanville's principal argument is that it is entitled to summary judgment because
20  Plaintiff has failed to put forward evidence showing Plaintiff suffered a constitutional
21  violation.  Plaintiff brings her claim against Susanville under both the First and
22  Fourteenth Amendments.  Thus, to survive the motion for summary judgment and satisfy
23  the first prong of a Monell claim, Plaintiff must put forward evidence to show either her
24  First or Fourteenth Amendment rights were violated.
25  ///
26  ///
27  ///
28  ///

8

1

**A.      First Monell Prong—Plaintiff was Deprived of a Constitutional Right**

2

3      Under Monell, Plaintiff must first point to evidence creating a genuine issue of

4  material fact as to whether Plaintiff was deprived of a constitutional right.  See Mabe,

5  237 F.3d at 1110.

6      Here, Plaintiff contends Susanville deprived her of both her Fourteenth and First

7  Amendment constitutional rights to familial association.

8

9

**1.      Fourteenth Amendment Claim**

10

11      Parents of a decedent have a constitutionally protected liberty interest in their

12  familial relationship under the Fourteenth Amendment.  Curnow By and Through

13  Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir. 1991).  "It is well established

14  that a parent has a fundamental liberty interest in the companionship and society of his

15  or her child and that the state's interference with that liberty interest without due process

16  of law is remediable under 42 U.S.C. § 1983."  Lee v. City of Los Angeles., 250 F.3d

17  668, 685 (9th Cir. 2001) (internal citations, quotations, and alterations omitted).  The

18  standard for such a violation is based on substantive due process, see Moreland v.

19  Las Vegas Metro. Police Dep't, 159 F.3d 365, 371 (9th Cir. 1998), as the Fourteenth

20  Amendment "provides heightened protection against government interference with

21  certain fundamental rights and liberty interests," Washington v. Glucksberg, 521 U.S.

22  702, 721 (1997).

23      "The concept of 'substantive due process,' . . . forbids the government from

24  depriving a person of life, liberty, or property in such a way that 'shocks the conscience'

25  or 'interferes with rights implicit in the concept of ordered liberty.'"  Nunez v. City of

26  Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (quoting United States v. Salerno,

27  481 U.S. 739, 746 (1987)).

28  ///

1  "The substantive component of the Due Process Clause is violated by executive action

2  only when it 'can properly be characterized as arbitrary, or conscience shocking, in a

3  constitutional sense.'" Arres v. City of Fresno, CV F 10-1628 LJO SMS, 2011 WL

4  284971, at *14 (E.D. Cal. Jan. 26, 2011) (quoting Collins v. City of Harker Heights, 503

5  U.S. 115, 128 (1992)).

6        Thus, "[t]o prevail on a Fourteenth Amendment claim arising out of the loss of a

7  familial relationship, a plaintiff must show that the Defendant's conduct shocks the

8  conscience." Provencio v. Vazquez, 258 F.R.D. 626, 640 (E.D. Cal. 2009) (citing

9  Moreland, 159 F.3d at 372); see also Arres, 2011 WL 284971, at *15 ("Conduct intended

10 to injure in some way unjustifiable by any government interest is the sort of official action

11 most likely to rise to conscience-shocking level."); Kim v. City of Santa Clara,

12 No. C 09-00025 RS, 2010 WL 2034774, *6 (N.D. Cal. May 19, 2010).  "What state of

13 mind shocks the conscience depends on the circumstances of a particular case." Id.

14 "[O]nly a purpose to cause harm unrelated to the legitimate object of arrest will satisfy

15 the element of arbitrary conduct shocking to the conscience, necessary for a due

16 process violation." Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 372

17 (9th Cir. 1998) (quoting County of Sacramento v. Lewis, 523 U.S. 833 (1998)).

18        Additionally, "[w]here a claim for interference with familial relationships is

19 integrally predicated upon, or entwined with, other conduct that is alleged to be

20 unconstitutional, a finding that the other conduct was constitutional generally will

21 preclude recovery for interference with familial relationship." Robbins v. City of Hanford,

22 Nos. CIV F 04-6672 AWI SMS, CV F 05-0147 OWW SMS, 2006 WL 1716220, *14 (E.D.

23 Cal. June 19, 2006) (citing Gausvik v. Perez, 392 F.3d 1006, 1008 (9th Cir. 2004);

24 Schaefer v. Goch, 153 F.3d 793, 799 (7th Cir. 1998) ("Because we have concluded that

25 Sergeant Goch did not violate Kathy Nislowski's rights under the Constitution, her

26 parents' claims based on the loss of her society and companionship necessarily fail as

27 well."); Crowe v. County of San Diego, 359 F. Supp. 2d 994, 1039 (S.D. Cal. 2005)).

28 ///

1    Whether conduct "shocks the conscience" may be decided by the court on a

2    motion for summary judgment.  <u>Kim</u>, 2010 WL 2034774, at *7.

3    Plaintiff's Opposition and Supplemental Brief put forward several different

4    arguments and theories of the case.  Although convoluted, Plaintiff's various contentions

5    can be broken down to these three main arguments:  1) Officer Vega violated Parker's

6    constitutional rights when he arrested Parker because he lacked probable cause to

7    make the arrest; 2) arresting Parker in the face of a serious medical condition violated

8    Parker's constitutional rights; 3) Susanville's alleged practice of raising or setting bail

9    over the phone in ex parte communications with the judge violated Parker's

10    constitutional rights.

11

12    <u>Lack of Probable Cause to Arrest Parker</u>

13    Plaintiff's opposition to Susanville's Motion states that Parker's arrest by Officer

14    Vega violated Parker's constitutional rights because Officer Vega did not have probable

15    cause to arrest Parker.  (ECF No. 120 at 5.)  Specifically, Plaintiff argues Officer Vega's

16    arrest was improper because "the officer . . . did not have the [Restraining] Order, did not

17    review the Order prior to the arrest or during the arrest, and the Order attached to the

18    arrest report <u>appears</u> to expire on July 29, 2009."  (ECF No. 120 at 5 (emphasis added).)

19    Additionally, Plaintiff argues Officer Vega "did not have probable cause because the

20    element of intent was missing."  (<u>Id.</u>)

21    Nowhere does Plaintiff's opposition contend Officer Vega's conduct shocks the

22    conscience.  Moreover, the Court finds Officer Vega's conduct in arresting Parker does

23    not shock the conscience.

24    ///

25    ///

26    ///

27    ///

28    ///

1    The undisputed facts establish Officer Vega went to Parker's ex-girlfriend's home

2    based on a report of domestic violence and court order violation.  He received that call

3    from dispatch.  There, Officer Vega was informed the restraining order had been

4    extended, that Sides and Vegas described a man who matched Parker's description

5    driving past Sides' home in a car which matched the description of the car Parker was

6    later found in, that Officer Vega questioned Parker regarding the restraining order, and

7    that Parker informed Officer Vega he was going to court for a hearing on the restraining

8    order that day.  Notably, there is no evidence that when Officer Vega arrested Parker,

9    Parker indicated or represented to Officer Vega or the other officers that the Restraining

10   Order had expired.

11   The fact that Parker informed Officer Vega that he did not drive past the house,

12   that Officer Vega did not see the offense committed, and that Parker was found in the

13   passenger seat of the vehicle, neither establish that Parker did not commit the alleged

14   violation of the restraining order, nor establish that Officer Vega acted at all

15   unreasonably in arresting Parker.  There is simply no evidence before the Court even

16   remotely raising a genuine issue of material fact which would allow a reasonable jury to

17   find Officer Vega's conduct shocks the conscience in arresting Parker.

18

19   Parker's Serious Medical Condition

20   Plaintiff's response to the Court's request for supplemental briefing argues Officer

21   Vega's conduct in "ignoring [Parker's] serious medical condition, while arresting [him] for

22   a misdemeanor, then taking him to jail, heedless of the serious medical condition, and

23   taking further action by asking the judge to increase the bail to $150,000 [to insure] that

24   Parker could not make bail" shocks the conscience.  (ECF No. 139 at 2.)  Plaintiff

25   contends that "[t]he analysis conducted by the courts for excessive force parallels the

26   kind of analysis that this court would engage in to determine if the City of Susanville

27   police officers acted with deliberate indifference."  (ECF No. 139 at 3.)

28   ///

1    According to Plaintiff, the Court should employ the factors typically used in Fourth

2    Amendment excessive force cases determine the officers' "on-the-scene reasonability."

3    However, Plaintiff cites to absolutely no authority, nor provides any persuasive

4    argument, for the Court to use this Fourth Amendment analysis to determine whether

5    Susanville's conduct shocks the conscience under the Fourteenth Amendment.

6         Plaintiffs' contention that it shocks the conscience to arrest Parker "in the face of

7    two letters from treating medical doctors stating that he should be placed on house

8    arrest because of his serious medical condition" also fails.  (ECF No. 139 at 5.)  Parker

9    did not need to be immediately hospitalized for an emergency medical situation at the

10   time of his arrest; rather, he was recovering from surgery that had occurred several

11   weeks earlier.  Although Plaintiff assigns much weight to the letters from doctors

12   regarding Parker's medical condition, these letters do not, by any stretch of the

13   imagination, indicate Parker should not be arrested for a crime when the arresting officer

14   has probable cause to believe Parker committed the crime.  To the contrary, these

15   letters merely recommend that, if possible, Parker be put on house arrest should he be

16   arrested.

17        As a matter of public policy, such a letter, or medical condition, cannot serve as

18   carte blanche for an individual to commit crimes without facing the legal repercussion of

19   arrest, simply because the arrestee's medical condition may deteriorate in jail.  There is

20   simply nothing "shocking" about a police officer affecting an arrest when the police officer

21   has probable cause to believe the arrestee violated a domestic violence restraining

22   order, and the arrestee faces no immediate medical emergency.  This Court declines to

23   set a precedent under which simply arresting a person who claims to have a serious

24   medical condition, but is not having a medical emergency, is conduct that "shocks the

25   conscience."

26   ///

27   ///

28   ///

1    Finally, it does not "shock the conscience" for the arresting officer to leave the

2    decision of whether the arrestee should be placed on house arrest or incarcerated to a

3    judge, as the undisputed facts establish occurred in this case.  Quite obviously, the

4    arresting officer has no control over whether and how long an arrestee may be

5    incarcerated for.  In this case, Parker was turned over to Lassen County for that

6    determination.  The Court refuses to find that such conduct violates the Fourteenth

7    Amendment.

8

9         Setting Bail in Parker's Case

10   Plaintiff finally takes issue with Susanville's purported practice of setting or raising

11   bail over the phone.  However, the evidence submitted does not show that bail was set

12   or raised in this manner when Parker was arrested in September 2009.  To dispute

13   Susanville's undisputed fact that Officer Vega had nothing to do with setting Parker's bail

14   in September, Plaintiff cites to the deposition of Officer Tyler Finch, which shows that bail

15   was set in this manner in Parker's case in July 2009.  (ECF No. 139 at 3 n.3).  Plaintiff

16   also cites the deposition of Police Chief Atkinson, and states that this deposition shows

17   that bail was sometimes, or even frequently, set in this manner in Susanville.  (ECF

18   No. 139 at 7).  Plaintiff states the Atkinson Deposition is included as Exhibit 5 to ECF

19   No. 121.  However, Atkinson's deposition is included neither in the courtesy copies

20   provided by Plaintiff to the Court, nor in the exhibits to entry number 121 on the docket in

21   this case.  Rather, Exhibit 5 to docket entry number 121 is the declaration of Undersheriff

22   John Mineau.  (EF No. 121-5.)  Plaintiff also submitted the deposition of Officer Vega, in

23   which he states that he had nothing to do with the bond set in Parker's case.  (ECF

24   No. 121-1 at 11.)

25   ///

26   ///

27   ///

28   ///

                       14

1    Thus, the only evidence regarding raising bail via ex parte phone conversations is

2    the testimony of Tyler Finch, which pertains only to Parker's July 2009 arrest.  There is

3    no evidence before the Court that bail was set in this manner in Parker's case in

4    September 2009, or that there is a pattern of setting bail in this manner in Susanville.

5    The evidence regarding bail being set over the phone is therefore of questionable

6    relevance to Parker's September 2009 arrest.  This evidence certainly does not create a

7    genuine issue of material fact as to whether Susanville's conduct in affecting Parker's

8    arrest violated the Fourteenth Amendment.

9    In sum, the circumstances of Parker's arrest do not "shock the conscience."

10   Plaintiff presents not a scintilla of evidence showing that Officer Vega, or any of the other

11   officers, or the City of Susanville as an entity, had a purpose to cause harm to Parker

12   unrelated to the legitimate object of arrest.  As the Court stated in Kim, 2010 WL

13   2034774, at *7, "[w]hile there can be no question that the facts of this case are

14   monumentally tragic, the police officers' behavior and decisions cannot be said to shock

15   the conscience."  Thus, there is no Fourteenth Amendment violation, and the first prong

16   of Monell liability is not met.  See id. (finding no Monell liability against city when Plaintiff

17   failed to show constitutional violation on motion for summary judgment).

18

19                    **2.      First Amendment Claim**

20

21   Plaintiff also alleges that her First Amendment right to familial association with her

22   son was violated by Susanville.  Notably, neither Plaintiff nor Defendant cites to a single

23   case setting forth a clear standard for such a claim.  However, in responding to the

24   Court's request for supplemental briefing, Plaintiff cites to an Eastern District case which

25   states that First Amendment claims for deprivation of the right to familial association are

26   duplicative of claims for deprivation of that right under the Fourteenth Amendment.  (ECF

27   No. 139 at 6 (quoting Reyes ex rel. Reyes v. City of Fresno, No. CV F 13–0418 LJO

28   SKO, 2013 WL 2147023 (E.D. Cal. May 15, 2013).)

                                          15

1  Susanville's Supplemental Brief states that

2          the familial interest Plaintiff claims the Defendant Susanville
3          Police Department violated is not an associational interest
           related to free speech and petition[;] therefore the First
4          Amendment, as a matter of law, cannot serve as a basis for
           any cause of action against any of the Defendants.   It is
5          believed [P]laintiff's reference to the First Amendment in
           Paragraph 117 of the Eight[h] Claim for Relief was error and
6          should be disregarded.

7  (ECF No. 138 at 3.)  Plaintiff responded that "Plaintiff believes that the claim is most

8  strongly pled under the Fourteenth Amendment according to the reasoning of the

9  Eastern District and, thus, the claims appear to be duplicative."  (ECF No. 141 at 1.)

10        The Supreme Court has recognized two types of free association rights: the right

11  to intimate relationships and the right to associate for the purposes of engaging in the

12  activities set forth in the First Amendment; i.e., speaking, worshiping, and petitioning the

13  government.  Roberts v. United States Jaycees, 468 U.S. 609, 617–18 (1984); IDK,

14  Inc. v. County of Clark, 836 F.2d 1185, 1192 (9th Cir. 1988).

15  "The former is protected as a personal liberty under the Fourteenth Amendment, while

16  the latter is protected by the First Amendment."  Reyes, 2013 WL 2147023, at *9

17  (quoting Ovando v. City of Los Angeles, 92 F. Supp. 2d 1011, 1017 (C.D. Cal. 2000)).

18  "It is well established that a parent has a "fundamental liberty interest" in "the

19  companionship and society of his or her child" and that "[t]he state's interference with

20  that liberty interest without due process of law is remediable under § 1983."  Lee

21  (quoting Kelson v. City of Springfield, 767 F.2d 651, 654–55 (9th Cir. 1985)).  "[T]his

22  constitutional interest in familial companionship and society logically extends to protect

23  children from unwarranted state interference with their relationships with their parents."

24  Id. (citing Smith v. City of Fontana, 818 F.2d 1411, 1418 (9th Cir. 1987) overruled on

25  other grounds by Hodgers–Durgin v. de la Vina, 199 F.3d 1037 (9th Cir. 1999)).

26  ///

27  ///

28  ///

1    Moreover, "the First Amendment protects those relationships, including family

2    relationships, that presuppose 'deep attachments and commitments to the necessarily

3    few other individuals with whom one shares not only a special community of thoughts,

4    experiences, and beliefs but also distinctively personal aspects of one's life.'"  Board of

5    Dir. v. Rotary Club, 481 U.S. 537, 545 (1987) (quoting Roberts, 468 U.S. at 619–20);

6    see also Conti v. City of Fremont, 919 F.2d 1385, 1388-89 (9th Cir. 1990).

7         A recent district court case observed that "the contours of a First Amendment

8    familial association claim are unclear," Reyes, 2013 WL 2147023, at *10, and indeed the

9    Court is aware of no Ninth Circuit case setting out specifically the conduct or elements

10   that constitute violation of familial association under the First Amendment.  In Reyes, the

11   court found the First Amendment right of familial association claim duplicative of the

12   Fourteenth Amendment claim, observing that "[the contours] regarding the Fourteenth

13   Amendment claim are more defined.  As such, when a particular Amendment provides

14   an explicit textual source of constitutional protection against particular government

15   conduct, that Amendment must be the guide."  Id. (citing Albright v. Oliver, 510 U.S. 266,

16   273 (1994).  There, the court found that "[t]he weight of authorities indicates that the

17   Fourteenth Amendment is the more precise source for familial association rather than

18   the First Amendment."  Id.  Thus, Reyes dismissed the First Amendment claim as

19   duplicative of the Fourteenth Amendment claim.  Id.

20        However, this Court is not bound to the decision of another district court, and this

21   Court disagrees with this holding in Reyes for several reasons.  First, the Fourteenth

22   Amendment does not explicitly provide a textual source of constitutional protection for

23   the right of familial association.  Indeed, this doctrine is typically employed in the

24   opposite circumstance, "where a particular Amendment provides an explicit textual

25   source of constitutional protection against a particular sort of government behavior, that

26   Amendment, not the more generalized notion of 'substantive due process,' must be the

27   guide for analyzing those claims."  Albright, 510 U.S. at 273 (quoting Graham v. Connor,

28   490 U.S. 386 (1989)) (internal quotations omitted).

1    Here, it is the case law setting out the contours of the Fourteenth Amendment, and not

2    the Fourteenth Amendment itself, which provide the precise source for the familial

3    association right.  As such, a First Amendment familial association claim is not

4    necessarily barred by this doctrine.

5           Moreover, the Ninth Circuit, as well as other district courts, has found that familial

6    relationships, such as the parent-child relationship, are protected by the First and

7    Fourteenth Amendments.  Lee, 250 F.3d at 685.  In Lee, the plaintiff, a mother, alleged

8    that she had started searching for her son after his arrest, and had contacted the

9    Los Angeles police department, who told her that they had no record of, or information

10   concerning, her son.  Id.  In fact, the Los Angeles police department knew or should

11   have known that they had arrested him and caused him to be extradited to New York.

12   Id. at 686.  From 1993 to 1995, the plaintiff continued to search for her son and

13   repeatedly contacted the police department.  Id.  The Ninth Circuit found that these

14   allegations were sufficient to state a claim for violations of the First and Fourteenth

15   Amendments.  Id.  However, the Ninth Circuit in Lee did not lay out the elements or

16   analysis for such a claim.  See id.  Similarly, in Dela Torre v. City of Salinas, a case from

17   the Northern District of California, the Court held that a mother could state a First

18   Amendment claim based on the right to familial association, in addition to a Fourteenth

19   Amendment claim.  No. C-09-00626 RMW, 2010 WL 3743762, *4 (N.D. Cal. Sept. 17,

20   2010) (citing Lee, 250 F.3d 668).

21          Given that there are no clear standards that apply to a claim for interference with

22   the right to familial association in violation of the First Amendment, the Court finds it

23   appropriate to import the standards that apply to other associational freedoms claims.

24   Where a policy interferes with core associational liberties, "it cannot be upheld unless it

25   is supported by sufficiently important state interests and is closely tailored to effectuate

26   only those interests."  Zablocki v. Redhail, 434 U.S. 374, 388 (1978).

27   ///

28   ///

1    Here, Plaintiffs assert several theories as to Susanville's policies which may give

2    rise to <u>Monell</u> liability.  However, Plaintiff points to no policy, nor evidence creating a

3    genuine issue of material fact as to whether there was a policy, which interfered with

4    Plaintiff's First Amendment associational rights.  (<u>See</u> ECF Nos. 120, 139.)  It has been

5    said before, but it bears saying again: "judges are not like pigs, hunting for truffles buried

6    in briefs."  <u>Guatay Christian Fellowship v. County of San Diego,</u> 670 F.3d 957, 987

7    (9th Cir. 2011).  Plaintiffs have been afforded an opposition to Susanville's motion for

8    summary judgment, supplemental briefing, and a supplemental response, and have still

9    failed to so much as identify a policy which violated Plaintiff's First Amendment

10   associational rights.  Thus, there is no evidence of a First Amendment violation, and the

11   first prong of <u>Monell</u> liability is not met.

12

13       **B.      Remaining <u>Monell</u> Factors**

14

15   Plaintiff has failed to show that there is a genuine issue of material fact as to

16   whether Susanville violated Plaintiff's constitutional rights, and thus Plaintiff fails to show

17   that even the first <u>Monell</u> factor survives Susanville's motion for summary judgment.

18   As such, although Plaintiff attempts to string together any and all possible issues to

19   show the existence of a policy which caused the supposed violation of Plaintiff's

20   constitutional rights, the Court need not reach the additional <u>Monell</u> factors, and

21   therefore declines to address the merit of Plaintiff's arguments regarding Susanville's

22   alleged policy and alleged failure to train.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

**CONCLUSION**

2

3        As set forth above, Plaintiff fails to show that there is a genuine issue of material

4   fact warranting a denial of Susanville's motion for summary judgment.  Accordingly,

5   Susanville's Motion for Summary Judgment is GRANTED.  (ECF No. 97.)

6        IT IS SO ORDERED.

7   Dated:  September 23, 2013

8

9

10   _____
     MORRISON C. ENGLAND, JR., CHIEF JUDGE
11   UNITED STATES DISTRICT COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28